McCartee v. Camel.

---

## McCARTEE, administrator, &c. vs. CAMEL.

Where one of the next of kin of the decedent, and who was entitled to a distributive share of his estate, left her domicil of origin, in the city of New-York, and went to reside at a place near the city of Baltimore, and continued to correspond with her mother and sisters in the city of New-York, but had not answered their letters for about twelve years previous to the death of the decedent, but there was nothing else to raise a legal presumption of her death; *Held,* that the administrator of the decedent was not justified in paying the share of the estate belonging to the absentee, to her sisters, without making inquiries at the last known place of residence of the absentee, to ascertain whether she was living or dead.

Where a person has not been heard from in seven years, and when last heard from he was beyond sea, without having any known residence abroad, the legal presumption is that he is dead.

This presumption has been adopted by analogy to certain provisions of the revised statutes, particularly the sections relative to the presumption of the death of persons upon whose lives estates in lands depend, where such persons have remained

McCartee *v.* Camel.

beyond sea, or absented themselves, in this state or elsewhere, for seven years together.

But the only presumption arising from such a protracted absence is, that the absentee is dead, if he has not been heard from within the seven years; not that he died at any particular time within the seven years, or even on the last day of that term.

Even where a person whose existence is in question has remained beyond sea for seven years, if he had a known and fixed place of residence in a foreign country when he was last heard from, he ought not to be presumed to be dead, without some evidence of inquiries having been made for him, at such known place of residence. and without success.

Where the person, whose death is to be presumed, is in fact within the United States, and not technically beyond sea, absenting himself *in this state or elsewhere*, as used in the statute, means absenting himself from his last place of residence, in this state or in the United States, which was known to his family or his relatives.

The mere fact that a person has absented himself from the place of his birth, or from his original domicil, for more than seven years, does not raise a presumption that he is dead.

In analogy to the statute of limitations, suits by creditors, legatees or distributees, before a surrogate, to obtain payment of their debts or legacies, or distributive shares, should be instituted within the time in which suits of the same character are required to be commenced in the courts of common law or of equity.

In cases where the courts of common law, the court of chancery, and the surrogate's court, have concurrent jurisdiction, a suit before the surrogate must be brought within the time limited by the revised statutes for commencing the suit at law, or in chancery. But in cases in which the court of chancery and the surrogate's court alone have concurrent jurisdiction, the suit before the surrogate should be instituted within the time prescribed for the commencement of suits of the same character in equity in cases where the subject matter of the suit is not cognizable by the courts of common law.

THIS was an appeal, by R. McCartee, the administrator of the estate of Sarah Brown deceased, from a decree of the surrogate of the city and county of New-York, directing the appellant to pay. to Catharine Camel, the respondent, her distributive share of the estate of the decedent. S. Brown died in New-York in 1832, and letters of administration upon the estate were granted in August of that year. The persons who at the time of her death were entitled to distributive shares of her estate, were the children of a deceased sister, and the children of her deceased half-brother R. McDowell. At the time of the death of R. McDowell, which was long before the death of S. Brown, he had one son, Robert N. McDowell, and three daughters, Catharine, the respondent in this case, Margaret, and Ellen Ann, now the

McCartee *v.* Camel.

wife of G. C. Hubbard. R. N. McDowell left his residence in New-York twenty-six or twenty-seven years previous to the hearing before the surrogate, and went to sea. And he was last heard of in the summer of 1830, as having sailed from some port in South America. Catharine, the respondent, who was then unmarried, left the residence of her mother in New-York, in 1813, with a family who were removing to Maryland; and when next heard of, about seven years afterwards, was residing in the neighborhood of Baltimore, and was still unmarried. At that time several letters passed between her and her friends in the city of New-York; her mother and two sisters, together with an illegitimate son, continuing to reside at the latter place. After that, she was not heard of by her relatives in New-York for about fourteen years. And although they several times wrote letters to her, directed to her last known place of residence, they received no answers; from which circumstance they supposed her to be dead, until after the administrator had made a distribution of the property of the intestate between the other two daughters of R. McDowell, as being entitled to the one half thereof, and the children of his deceased sister as being entitled to the other half. In the latter part of 1834, or the beginning of 1835, her relatives in New-York heard she was still living, at a place called Never Die, in the vicinity of Baltimore; and her son and one of her sisters went there and found her. And it then turned out that she was living there at the death of S. Brown, the intestate, and was then a widow. Her brother-in-law shortly afterwards sent money to her to enable her to return to her friends in New-York. She accordingly returned there in 1835, and was then informed that her distributive share of the estate of her deceased aunt had been paid over by the administrator to her two sisters, under the supposition that she was dead.

In February, 1844, she presented her petition to the surrogate, claiming one third of one half of the personal property of the intestate, and praying that the administrator might render an account; and that he should be decreed to pay her the amount which might be found due for her distributive share of the estate, with interest thereon. The parties appeared before the surrogate,

McCartee *v.* Camel.

upon the return of the citation ; and the administrator filed his account; in which account it was stated that the one half of the estate had been paid over to the two sisters of the petitioner, who were supposed to be the sole surviving children and representatives of the half brother of the intestate. The account was verified in the usual manner, and its correctness was not contested. And without putting in any answer whatever to that part of the petition which prayed for a decree for the payment of the distributive share of the petitioner, the parties proceeded to take testimony as to various matters which were afterwards set up as a bar to such a decree.

*S. J. Wilkin,* for appellant. The respondent having been absent, and not heard from, for more than seven continuous years previous to the distribution of the personal estate of Sarah Brown, the law presumed her, at the time of the distribution, to be dead. (*Loring* v. *Steinman,* 1 *Metc.* 204. *King* v. *Paddock,* 18 *John.* 141. *Doe* v. *Jesson,* 6 *East,* 80. *Jackson* v. *Boncham,* 15 *John.* 226. *Hopewell* v. *De Pinna,* 2 *Camp.* 113.) In *Doe* v. *Jesson,* where it was proved that a person went to sea at a particular time, which was the last account given of him, his death was presumed at the end of seven years from that time. And in *Hopewell* v. *De Pinna,* where the defendant pleaded coverture in bar of an action of assumpsit, and proved her marriage, and that her husband went abroad twelve years before the commencement of the action, this was held not to be sufficient; and the defendant was required to prove that her husband was alive within seven years. Where no account can be given of the person, the presumption of the duration of life ceases at the expiration of seven years from the time when he was last known to be living, (1 *Phil. Ev.* 197,) a period which has been fixed from analogy to the statute of bigamy, and the statute concerning leases determinable on lives. (*Idem, per Spencer, Ch. J.,* 18 *John.* 143.) For the provisions of the revised statutes of this state respecting bigamy, see 2 *R. S.* 687. The section relative to the presumption of death of the person upon whose life estates depend, is as follows. If any person, upon whose life any estate

in lands or tenements shall depend, shall remain beyond sea, or shall absent himself, in this state or elsewhere, for seven years together, such person shall be accounted naturally dead, in any action concerning such lands or tenements, in which his death shall come in question; unless sufficient proof be made in such case, of the life of such person. (1 *R. S.* 749.) In *Jackson* v. *Boneham*, (15 *John.* 227,) the death of a person was proved by hearsay in the family. On proceedings before the surrogate to distribute the personal estate of Sarah Brown, the surrogate, on the legal presumption of the death of Catharine Camel, would have ordered the distribution of her share of the estate amongst her next of kin. (2 *R. S.* 2*d ed.* 35, § 75, *sub.* 5.) If the appellant, as administrator, distributed the estate in the same manner that it would have been distributed by the surrogate, on formal proceedings for that purpose, before him, the distribution should be held valid, and should discharge the administrator. (*Lee* v. *Brown*, 4 *Ves. Jun.* 369. *Howe* v. *Earl of Dartmouth*, 7 *Id.* 150.) The funds in the hands of the appellant, as administrator, to be distributed, were properly paid over to her sisters; there being no legitimate child of Catharine Camel to represent her. And the releases produced by the appellant, before the surrogate, ought to have been deemed valid discharges as against the respondent. (4 *Ves.* 369. 7 *Id.* 150. 2 *R. S.* 35, § 75, *sub.* 5.) The respondent, if she had any legal or equitable claim against the appellant, on her return to the city of New-York, cannot now enforce it: 1. Because of the length of time she had suffered to elapse after being informed of the distribution of the estate, before calling on the administrator for her share. (*Dagley* v. *Tolferry*, 1 *P. Wms.* 285. *Phillips* v. *Paget*, 2 *Atk.* 81. *Cooper* v. *Thornton*, 3 *Bro. C. C.* 96, 186.) It will be perceived, on examining the cases upon several of the above heads, that no certain time is given within which the presumptive bar, release, waiver, or abandonment shall arise. And that the only criteria of fatal laches are, the nature of the demand, and the inconvenience, public or private, of allowing it to be enforced against the opposite party, at a remote period. Thus, in matters of election

McCartee v. Camel.

and specific execution, great promptness and diligence are de-
manded.   Creditors and next of kin permitting an erroneous
distribution to take place, stand upon much the same ground.
But where no striking argument of inconvenience arises, the
courts are warranted in allowing a time corresponding to the
statute of limitations, viz. six years as to personal, and twenty
years as to real estate.   2.  The respondent substituted Mr. Hub-
bard, and her sister Margaret McDowell in the place of the
appellant, as the persons from whom she was to receive her dis-
tributive share ;  portions of which she did receive.   Whereby
the appellant was induced to neglect the means of regaining the
funds, if required so to do, from those to whom the share had
been paid.   The respondent might have maintained an ac-
tion at law for the recovery of her distributive share.   And eight
years having elapsed, after her knowledge of the distribution of
the fund, before any demand was made, her claim is barred.   (2
*R. S.* 114, § 9.   *Kane* v. *Bloodgood,* 7 *John. Ch. Rep.* 90.   *Sou-
zer* v. *De Meyer,* 2 *Paige,* 574.)   Or if no action at law could
have been sustained, 10 years had elapsed after she was entitled
to file a bill in equity for her distributive share of the estate, and
her remedy is therefore barred, by the provisions of the revised
statutes on that subject.   (2 *R. S.* 301, § 52.)   The respon-
dent should have produced proof of the death of her husband,
to entitle her to proceed in her own name.   If wrong in all the
foregoing positions, we submit that, under the circumstances of
the case, the appellant is not chargable with interest and costs.
(*See cases above referred to.*)   The respondent had a remedy
against Hubbard, and Margaret McDowell, which she ought to
have pursued.   The decree is also erroneous in not crediting the
appellant with the sums paid to the respondent at various times,
by Hubbard and M. McDowell, on account of her distributive
share.

*E. W. Chester,* for respondent.   The matters brought in
issue, and to be decided by the chancellor, as made by the peti-
tion of appeal and answer, are, 1st. As respects the objection
made by the appellant that the respondent had not shown that

McCartee v. Camel.

she was a widow, and as such entitled to institute the proceedings in this cause before the surrogate. We insist that it was not necessary she should be a widow to entitle her to institute such proceedings. If it is intended by this objection to claim that she was a feme covert, that was an affirmative for the appellant to maintain, and it should have been urged at the outset, in abatement. It was only spoken of on summing up before the surrogate. No objection of the kind appears in the return of the surrogate. 2d. The petition of appeal states the absence of respondent from the city of New-York without having been heard from for about 14 years. From which absence, the appellant claims that there was a legal presumption of her death, and that he was justified in paying over the proceeds of the estate to the distributees residing in the city of New-York. New-York was not her place of residence, and no presumption arises from the fact that her relations in New-York had not heard from her. She had a well known and well defined place of residence in Baltimore county, Md. where inquiries should have been made for her, and which, if made, would have been successful. 3d. It is urged by the appellant that the respondent consented that her portion of the estate should remain with her sisters ; saying that she would look to them for it and not trouble appellant. The proofs do not show this. They show that a deception was practised on the respondent, by a representation that the money was in the hands of her son, and she, supposing this to be true, expressed her satisfaction. No agreement of the kind mentioned is proved. She could never have maintained a suit against them. The appellant denied his being liable to her, and attempted to get a release, without any consideration. 4th. The appellant is to be confined to the allegations in the petition of appeal as to what was relied on and claimed to be proved before the surrogate. And he cannot raise any new defence here. The petition and answer make up the issue. The statute of limitations not having been relied upon below, must be excluded from consideration here. 5th. The appellant ought not to be excused from the payment of interest, and the decree of the surrogate was correct in allowing it ; because there has been an evident intention to

deceive and defraud the respondent; because the administrator might have recovered interest of Hubbard and McDowell; because during all this time the respondent has been unjustly deprived of the money rightfully due her. 6th. There is nothing in the nature and method of this defence, which ought to excuse the appellant from the payment of costs. 7th. Where any of the matters set up in defence depend on the credibility of the testimony, it is the province of the surrogate to judge of that credibility; and his conclusions therefrom stand like the conclusions of a jury, and ought not to be reversed by the appellate tribunal; except where they were clearly and obviously wrong.

THE CHANCELLOR. There is no doubt of the fact in this case, that the appellant paid over the one half of the intestate's estate to the two daughters of R. McDowell, in 1833, in good faith; supposing that their sister had died many years previous thereto without leaving legitimate issue. The presumption now is that the brother is dead; as he was beyond sea when he was last heard of in 1830, without having any known residence abroad; and no intelligence has been obtained respecting him since that time. This presumption is supposed to have been adopted by analogy to certain statutory provisions; particularly the provision of the statutes relative to the presumption of the death of persons upon whose lives estates in lands depend; where such persons have removed beyond sea, or absented themselves in this state, or elsewhere for seven years together. (1 *R. S.* 749, § 6. *Stat.* 19 *Charles* 2d, ch. 6, § 2.) But as he was heard of within two years previous to the death of S. Brown in 1832, there is no presumption that he was not alive at that time, so as to be entitled to a distributive share of her estate as one of the next of kin. The only presumption arising from such absence is that he is dead, if he has not been heard of within the seven years mentioned in the statute; not that he died at any particular time within the seven years, or even on the last day of that term. (*Doe ex dem. Knight* v. *Nepean*, 5 *Barn. & Adol.* 86; 2 *Mees. & Wels.* 894.) The surrogate was right therefore in not awarding to the respondent the fourth of the distributive

McCartee v. Camel.

share to which the brother was entitled if living at the death of the intestate ; without some evidence to establish the fact that he died before that time.

There was nothing upon which to found a legal presumption that the respondent was dead in 1832, or at the time when her distributive share was paid to the sisters in 1833; although her relatives in New-York had not then heard from her in twelve or thirteen years. Even where the person, whose existence is in question, has remained *beyond sea* for seven years, if he had a known and fixed residence in a foreign country when he was last heard from, he ought not, in justice, to be presumed dead, without some evidence of inquiries having been made for him at such known place of residence, without success. For the average duration of life of persons under sixty years of age is more than twice seven years. And in the present state of society, in this and other commercial countries, no presumption of the death of an individual does in fact arise from the mere circumstance that he has fixed his domicil abroad, and has not been heard of at the place of his birth, or of his original residence, for more than seven years. And if the law raises a presumption from that circumstance alone, by analogy to the statutory provision before referred to, still it does not apply to the case of this respondent. For she was not beyond sea, nor had she absented herself in this state, or elsewhere, for seven years previous to the death of the intestate; within the intent and meaning of the statute before referred to.

Where the person whose death is to be presumed, is in fact within the United States, and not technically *beyond sea,* " absenting himself *in this state or elsewhere*" must mean absenting himself from his last place of residence in this state, or in the United States, which was known to his family, or his relatives who would be likely to know whether he was living ; and from whom a party in the search of the truth would be likely to make inquiries. The mere fact, therefore, that the party has absented himself from the place of his birth, or from his original domicil, for more than seven years, does not raise a presumption that he is dead. Here the respondent had a mother and two

McCartee v. Camel.

sisters, and also a natural son, residing in New-York ; all of whom must have been known to the administrator. And they were undoubtedly aware of the fact that she was residing at Never Die in the vicinity of Baltimore, about twelve years before. If the administrator had made the proper inquiries, he would also have ascertained that fact. And having done that, he should have caused inquiries to be made at such last known place of her residence ; for the purpose of ascertaining whether she still resided there, or was dead, or had removed to some other place which could be ascertained. Or, if he did not wish to incur the expense of making such inquiries, he should have applied to the surrogate for a final settlement of his account, and the distribution of the fund in his hands to such persons as should come in and establish their claims to the same as the next of kin of the intestate. Or he might have taken security from those to whom he paid the money, to refund her share, in case it should afterwards appear that she was alive at the death of her aunt. The administrator probably acted upon the presump-tion that she was dead, because the letters written to her some ten or twelve years before remained unanswered. But it was almost as unsafe to rely upon that circumstance alone, as evidence of her death, as it would have been to presume from the name of her last known place of residence that she would live beyond the usual period of human life. The more rational presump-tion was that she had gone to some other place, and that the letters written to her had not reached her. For if she had died there, she probably would, previous to her death, have informed some of her acquaintances that she had a mother and other rel-atives living in New-York, and that the fact of her death would have been communicated to them by letter. The administrator, therefore, is not entitled to protection on the ground that he was legally authorized to presume the respondent was dead at the time the succession opened in 1832.

Nor has there been such an assent or acquiescence on her part, since she was aware of the fact of the payment of her dis-tributive share to her sisters, as in itself will constitute an equi-table bar to her claim against the administrator. She did

McCartee *v.* Camel.

indeed say to him, as some of the witnesses state, that she was contented to have the money remain as it was. But what she said was founded upon the erroneous impression that the fund was in the hands of her son, for her benefit; which false impression was caused by what was said by one of the sisters at that time. And that the administrator did not rely upon that declaration, as an absolute relinquishment of her claim upon him, is established by the fact that he shortly afterwards attempted to obtain a relinquishment of that claim.

The only remaining questions to be considered are, whether her claim was barred by the statute of limitations; and whether the administrator could avail himself of that defence before the surrogate. As the appellant was not called upon to state his defence, against her claim to a decree for the payment of her distributive share, before the taking of the testimony of the witnesses, it would be wrong to deprive him of that defence, if the evidence showed that it actually existed, upon the technical ground that he had not formally pleaded it as a bar to such claim. It appears in this case that the administrator had received the avails of the property of the intestate, and had actually paid over the half thereof belonging to the children of R. McDowell, as early as June, 1833. The right of the respondent to sue the administrator in the court of chancery, if not in a court of common law, for the whole of her distributive share of the estate, therefore, accrued at the expiration of one year after the granting of letters of administration in August, 1832. (2 *R. S.* 114, § 9.) And her right to institute a suit before the surrogate, for the same purpose, accrued at the same time. (*Idem,* 116, § 18.) This suit was not commenced until 1844; more than ten years after the right accrued. The statute of limitations does not in terms specify the time within which a creditor, legatee, or distributee, shall institute a suit before the surrogate, against executors or administrators, to obtain payment of his debt or legacy, or his distributive share of the estate of the decedent. But the legislature never could have intended to give to a party the right to institute such a suit before a surrogate, after his remedy was barred by the statute of limitations

McCartee v. Camel.

in all other courts. Such a suit therefore, by analogy to the statute of limitations, should be instituted before the surrogate within the time in which suits of the same character are required to be commenced in the courts of common law, or of equity. If it is a case in which the courts of common law, the court of chancery, and the surrogate's court, have concurrent jurisdiction, the suit before the surrogate should be brought within the time limited by the revised statutes for commencing the suit at law, and in chancery. (2 *R. S.* 301, § 49.) But if it is a case where the court of chancery and the surrogate's court alone have concurrent jurisdiction, then the suit before the surrogate should be instituted within the time prescribed for the commencement of suits of the same character in equity; in cases where the subject matter of the suit is not cognizable by the courts of common law. (1 *R. S.* 302, §§ 51, 52, 53.)

The conclusion at which I have arrived in this case, therefore, is, that the right of the respondent to recover from the administrator any and every part of her distributive share of the estate of S. Brown, in any of the courts of this state, was barred by the statute of limitations at the time she presented her petition to the surrogate, in January or February, 1844. The sentence or decree which is appealed from, must then be reversed. But as this is a new question, arising for the first time under the provisions of the revised statutes, I shall not charge the respondents with costs upon this appeal; nor with the costs of the administrator upon the proceedings before the surrogate.