### A. N. SHOWN, Adm'r, v. ANDREW McMACKIN.

1. CHANCERY PLEADINGS AND PRACTICE. *Bill to have administrator appointed.* Under the provisions of the Code, sec. 2209, *et seq.*, a bill may be filed by the personal representative of one of the next of kin of a deceased person against another one of the next of kin having assets of the estate of the deceased in his hands, to have an administrator appointed, and for the collection of the fund.

2. ADMINISTRATION. *Granted upon presumption of death.* There being no statute in this State providing that after an absence of a given time without being heard from, administration may be granted of the estate of an absent person, the courts should be cautious in acting upon the presumption of death from lapse of time, and should, as a general rule, require diligent inquiry at the place where the party was last heard from.

3. SAME. *Same. Presumption as to time of death.* Where a person when last heard from expressed a possible intention of returning home in a reasonable time, and has not been heard from for over a quarter of a century, it may be presumed as a fact that he died at the end of seven years, and without issue, he having been unmarried when last heard from.

Shown *v.* McMackin.

4. CHANCERY PLEADINGS AND PRACTICE. *Answer as evidence.* If the facts stated in an answer in avoidance are a direct and proper reply to an express charge or interrogatory of the bill, the answer is evidence of these facts.

FROM GREENE.

Appeal from the Chancery Court at Greeneville, H. C. SMITH, Ch.

H. H. INGERSOLL for complainant.

R. M. McKEE and ARMITAGE for defendant.

COOPER, J., delivered the opinion of the court.

In 1850, Andrew and John P. McMackin, young men and brothers, left their home in Greene county, and went to California. In the fall of 1853, Andrew returned home with $1,000 of his brother's money, John directing him to loan a part of it to his father, and to keep the residue for his brother. The father died in a year or two, and, his estate being insolvent, Andrew received back $350 of $500 loaned. John has never returned. The brothers had one sister, Martha J. Harrison, a married woman, who died in April, 1861, leaving children. The complainant qualified as the administrator of her estate in July, 1879, and filed this bill, on October 27th of that year, to have an administrator appointed on the estate of John, and to collect from Andrew the money due his brother.

The bill states that John P. McMackin expected to return home in a year or two after Andrew, but had never returned, nor sent any word or message to his friends. It says that he is not known to have

been alive since 1853, and avers that he is dead, that he died before his sister, that he died intestate, unmarried, and without issue, leaving his brother Andrew and his sister Martha J., his only heirs and next of kin. It is further averred that no one will apply, nor can be found to administer on his estate, and the court is asked to appoint an administrator under the Code, sec. 2209. The chancellor appointed an administrator as prayed, and, on final hearing, granted the relief sought, and defendant appealed.

The defendant demurred to the bill. One ground of demurrer is, that it does not appear from the bill that complainant can have any demand either against defendant or his brother, because it is not stated that complainant's intestate died before or after her brother. But this assignment is based on a mistake of fact, for the bill plainly avers that John is dead, and that he died before his sister. Whether these averments will be sustained merely by the presumption of his death arising from lapse of time, we may infer, but cannot know as matter of law from the allegations of the bill. Another ground of demurrer is, that administration cannot be granted because it is not shown that John had any estate in this chancery division. But the bill plainly avers that the money in Andrew's hands belongs to John's estate. The remaining cause of demurrer is, that the defendant is only liable to the estate of John, not to the complainant as distributee; that the statute does not contemplate the appointment of an administrator to be aggressive against other defendants, but for defense. But the statute authorizes

an administrator to be appointed in the case provided for by sec. 2209, " when six months have elapsed from the death, and no person will apply or can be procured to administer on the estate," upon the application of the next of kin or any creditor of the deceased, (sec. 2210), that the administrator shall be a party to the proceedings under all the responsibilities of a receiver, (secs. 2216, 2218), and that the administration shall be conducted in the same manner as the administration of an insolvent estate: Sec. 2219. The jurisdiction is purely statutory, and the bill should on its face make out a proper case: *Bruce* v. *Bruce,* 11 Heis., 760; *Evans* v. *Evans,* 2 Cold., 143; *Barry* v. *Frazier,* 10 Heis., 207; *Branner* v. *Branner,* 1 Lea, 106. The administrator, if appointed, is, however, a general administrator: *Todd* v. *Wright,* 12 Heis., 444. The statute is, therefore, comprehensive within the limits of the special jurisdiction conferred. It contemplates, in the cases provided for, a full administration, and the settlement of all matters touching the estate in which the creditor or distributee may be interested. No reason occurs, nor has any been suggested, why the administrator may not be " aggressive" in the particular case if the circumstances require it, as he certainly must be in the collection of the assets of the estate. And such aggressiveness would seem to be eminently proper where the defendant is himself the principal debtor of the estate, and entitled to administer, and fails to apply for letters.

There is more difficulty on the merits. No averment is made in the bill, nor is any proof introduced

to show that any inquiry has been actively instituted for the purpose of ascertaining whether John P. Mc-Mackin is actually dead or alive. The sole ground relied on is the presumption arising from lapse of time, and the absence of all information from him, that he is dead. We have no statute providing that after an absence for a given time a person's estate may be administered on as if he were dead, or that death shall be presumed for the purposes of administration after a given time. And administration on the estate of a living person is, as we have held upon full consideration, absolutely void: *D'Arusment* v. *Jones*, 4 Lea, 251. Obviously, the courts should be cautious in acting upon the presumption alone, and, as the general rule, diligent inquiry at the place where the party was last heard from should be required: *Puckett* v. *State*, 1 Sneed, 356; *McCartee* v. *Camel*, 1 Barb. Ch., 455.

In the present case the right of the complainant's intestate, as a distributee of her brother's estate, depends upon the fact that he died after their father, and before the sister. For the father would have been sole distributee, if the son had died intestate before him, and the sister would not be a distributee if the brother died after she did. The complainant has no right to file this bill under the statute except as the representative of one of the next of kin of John at the time of his death. The question is, therefore, whether the facts raise a sufficient presumption of death within the specified time.

If the case rested alone upon the bill and answer, the latter being under oath as called for, the complain-

ant must fail. For the defendant says in his answer that he received a letter from his brother John about five years after his return home, in which John said nothing about coming back, and that about the year 1868 he received information that John was then in California, and quite well. The bill avers that John has not "sent word or message to his friends at home." The answer above is a statement of facts in avoidance which is a direct reply to the charge. The rule in this State is that if the facts stated in discharge or avoidance in an answer are a direct and proper reply to an express charge or interrogatory of the bill, the answer is evidence of those facts. And *this,* whether the response be by a direct denial or by a statement of facts by way of avoidance: *Hopkins* v. *Spurlock,* 2 Heis., 152; *Woodard* v. *Robertson,* 3 Leg. Rep., 231; *Beech* v. *Haynes,* 1 Tenn. Ch., 569. Unless these statements are disproved by the record, they must prevail.

The answer, it will be noticed, gives no details of the circumstances attending the receipt of the letter, of its contents, or of the place at which it purported to be written. The answer elsewhere states that John could neither read nor write. The allusion to the information received in 1868 is still more vague. The defendant does not say that these facts were communicated to John's family or friends, nor does he give his deposition in the cause. Three witnesses are introduced by the complainant to prove Andrew's statements on this subject outside of the record. One witness testifies that he heard Andrew say, that old Mr. Philips told him that he, Philips, had received a

letter from his son about the commencement of the war that John was living; and that he had heard Andrew say recently that in 1866, or 1868, he got information of his brother through Josiah Guinn. Another witness says that two days before his deposition was taken defendant told him that he had not heard from his brother in fifteen years, and he had then received information in a roundabout way from one of the Philipses. The complainant testifies that when he was getting up the facts with a view to this bill, he had a conversation with the defendant, in which the latter told him that he heard from his brother just before the war, in a roundabout way, and had not heard from him since; that he supposed his brother had gone into the army and been killed. These conflicting statements tend to throw discredit on the averments of the answer, and to require some explanation from the defendant. But he neither comes forward himself, nor introduces any testimony that any other person had received information from his brother, or in relation to him. So far as appears, no person had heard from him, unless it be defendant, and he does not say that he communicated his information to any of the family. The defendant says in his answer that his brother said to him, when he left him in California, that he might come home in a year or two, or he might not. This language implies at least an expectation that he might come home in a few years, If, in fact, he has not communicated with his family, or been heard from for over a quarter of a century, the presumption of death would fairly arise. And the

circumstances would justify a finding that he died within the first seven years. Some of the authorities hold that when the presumption attaches, it only implies that the party is dead, but not that he died at any particular time during the period: *Doe* v. *Nepean*, 5 B. & Ad., 86; 2 M. & W., 894. Other authorities seem to hold that the presumption, as well as the fact of death attaches to the time, and fixes the date of the death at the end of the seventh year: *Hickman* v. *Upsall*, 13 English Rep., 676; *Clarke* v. *Canfield*, 2 McCarter Eq., 119 But all the authorities agree that the time of death is to be inferred by the court or jury from the circumstances: *Rust* v. *Baker*, 8 Sim., 443; *Spencer* v. *Roper*, 13 Ire., 333. And if the person was unmarried when he went abroad and was last heard from, the presumption of his death carries with it the presumption that he died without issue: *Rowe* v. *Hasland*, 1 W. Bl., 404; *Doe* v. *Griffin*, 15 East, 293.

Under the circumstances of this case, the reasonable presumption would be that the party died at the expiration of the seven years from the summer or fall of 1853, which would be before the death of the complainant's intestate. He was unmarried when last heard from, and must be presumed to have died without issue.

The chancellor has arrived at the proper conclusion as to the amount with which the defendant should be charged. But it clearly appears that there are no creditors of the estate, and therefore the defendant is entitled to retain one-half of the fund as distributee. The decree will be for the other half, with the costs of the cause.