## WILLIAM H. MERRITT *v.* MARTIN THOMPSON.

Bail are entitled to be discharged upon the death of their principal, and they have, themselves, an undoubted right to make the motion for such discharge.

There is no arbitrary or positive rule in respect to the time when the presumption of death may be drawn from the continued absence of a person. It is not necessary that seven years or any specific period should elapse, to lay the foundation for such presumption, but it may be drawn whenever the facts of the case will warrant it.

If the party, whose death is in question, went to sea, and nothing has been heard

Merritt v. Thompson.

of the vessel in which he left, or of those who went in her, the presumption, after a sufficient length of time has expired, will be that the vessel was lost, and that all on board of her perished.

What s a sufficient length of time to create such a presumption considered, and the cases upon the question collated and examined.

T. having departed upon a voyage, the ordinary limit of which was four months, and seventeen months having expired, and nothing having been heard of the vessel in which he sailed, or of those who were in her, and the period of time being much more than sufficient to have heard from all the commercial ports of the world—

*Held*, that it must be presumed that the vessel was lost, and that those on board of her, including T., had perished; and therefore his bail were entitled to be discharged.

The presumption of death in such a case does not rest upon the fact that the party has been absent and unheard of for such length of time alone, but upon the weightier circumstance that the vessel has not been heard from.

The question in such a case is not, whether it is not possible that the party may be alive, but whether these circumstances do not present so strong a probability of his death that a court of justice should act thereon. Presumptions founded in a reasonable probability must prevail against mere possibilities. Otherwise the conclusion could never be arrived at, that a man was dead until the natural limit of human life had been reached.

Formal and preliminary objections, not involving the merits of a motion, will not be considered upon appeal, unless it affirmatively appears that they were taken and overruled, when the motion was brought on for a hearing.

APPEAL from an order at special term, discharging the defendant's bail. This was an application by the defendant's bail for their discharge, upon the ground that the defendant was dead. It was shown by an affidavit, which was not controverted, that the defendant was master of the ship Helena. That he sailed with that vessel from this port in November, 1854, on a voyage to Melbourne, Australia. That, after arriving at Melbourne, he sailed from that port to various ports in the Chinese seas, and was, in the summer of 1856, at Hong Kong, in China. That a letter was received from him at that place, dated June 7, 1856, announcing his intention to go from there to Amoy and Swatao to load with Chinese emigrants for Havana. That intelligence was received through the newspapers, announcing the sailing of the Helena from Swatao for Havana on the 27th of Aug., 1856, but, that from that time to the present, a period of seventeen

months, nothing has been heard from the vessel or of the defendant. That the letter written by the defendant from Hong Kong is the last intelligence received of him by his friends and acquaintances, and the account in the newspapers, of the sailing of the vessel from Swatao for Havana, the last information received of her. That the ordinary length of passage for a vessel, of the class of the Helena, from Swatao to Havana, is about four months, and that the seventeen months that have elapsed is more than double the time necessary to hear at this port from every port in the known world. That during that time intelligence has been received many times from all the commercial ports of the world, but no tidings have been received of the vessel, of the defendant, or of any one on board of her. That letters of administration of the estate of the defendant have been granted to his wife and presumed widow, and to which is added the belief of the party deposing to these facts, that the defendant is dead.

*F. H. Dykers*, on the affidavit, moved that the bail be discharged, and an exoneratur entered upon the bail piece; which motion was granted by the judge holding the special term, and an order entered accordingly.

From the order the plaintiff appealed.

*C. A. Rapallo*, for the appellant.

*F. H. Dykers*, for the respondent.

DALY, FIRST JUDGE.—There is nothing in the notice of motion showing that the application was made by the defendant through his attorney, and unless that fact appears upon the face of the papers, we will assume, upon the appeal, that it was made by the bail or on their behalf, they having, undoubtedly, the right to make it.

The objection, that the affidavit does not state what the bail bond or undertaking was, nor who were bail, is a mere formal and preliminary objection, not involving the merits of the motion, and we must be satisfied that that objection was taken below

when the motion was brought on for a hearing, or we will not, upon appeal, reverse the order for that reason. We will assume that, if the objection had then been made, the defect, if it be one, would have been instantly remedied.

If the principal is dead, the bail are entitled to be discharged. This is expressly provided for by the Code, § 191, and was always the law. *Rawlinson* v. *Gunston*, 6 T. R. 284; M. Jones, 136; 2 Cromp. Pr. 88; 2 Sell. 55; Petersdorf on Bail, 389.

There is no arbitrary or positive rule in respect to the time when the presumption of death may be drawn. It is said that if a person goes abroad, and is not heard from for *seven* years, he is presumed to be dead, but this limitation is merely adopted by analogy from the statutes of 1 Jac. I, c. .11, § 2, and 19 Car. II, c. 6, § 2, the former of which exempted a party marrying from the penalties of bigamy, where the husband or wife had been absent for seven years without being heard from, and the latter of which, in respect to the lives of persons, in leases, declared that if absent for more than seven years they should be deemed naturally dead. But it is not necessary that seven years, or any specific period, should elapse to lay the foundation for the presumption of death, but it may be drawn whenever the facts of the case will warrant it. *Houseman* v. *Thornton*, 1 Holt N. P. C. 242; *The King* v. *The Inhabitants of Harborne*, 2 A. & E. 540; 1 Park on Insurance, 105, 106; Best on Presumptions, 59, 191, 238.

If the party whose death is in question went to sea, and nothing has been heard of the vessel in which he left or of those who went in her, the presumption, after a sufficient length of time has ensued, will be that the vessel was lost, and that all on board of her perished. *Green* v. *Brown*, 2 Strange, 1199; *Koster* v. *Innes*, Ry. & Mo. 331; 1 Park on Insurance, 105, 106, 107; Best on Presumptions, 238. The length of time that must elapse to create such a presumption will depend upon the nature of the voyage and of the navigation, and a court or a jury will be guided by the circumstances that are laid before them, in determining whether such a presumption is warrantable or not. In

*Houseman* v. *Thornton, supra*, the vessel left Havana on a voyage for Antwerp, and not having been heard of for nine months, the court held that it was to be presumed that she was lost. In *Watson* v. *King* (1 Starkie, 121), one Maxwell sailed from Jamaica on the 1st of March, 1814, in a vessel that formed one of a convoy. On the 9th of that month the vessel parted from the convoy in thick weather, after which, on the 20th, there was a heavy gale. On the trial, which appears to have been about a year afterwards, the vessel had not been heard of, and the point in the case being whether a power of attorney, by virtue of which property of Maxwell had been conveyed to the defendant on the 8th June, 1814, about three months after the sailing of the vessel, was to be deemed revoked, upon the assumption that Maxwell was then dead, Lord Ellenborough instructed the jury that it might be assumed that Maxwell was dead, but that it was for their consideration whether he was dead on the 8th of June, 1814, and the jury found for the plaintiff, assuming that Maxwell was dead on that day ; and in *Twemlow* v. *Oswin* (2 Camp. 85), the vessel sailed from Liverpool for Miremachi in April, 1807, and at the time of the trial, which was about two years afterwards, had not been heard of. As in the preceding case, Chief Justice Mansfield left it to the jury to say whether the vessel was lost, and the jury found that it was.

In the case before us, neither the defendant nor the vessel in which it is to be assumed that he sailed from Swatao, in China, upon a voyage to the Havana, has been heard of for a period of seventeen months. The usual length of such a voyage is four months. It was shown, by the affidavit, that during this long interval of time, intelligence has reached this city from every port of the commercial world, but no tidings have been received of the defendant or of the vessel. It is stated, further, that more than double the time necessary has elapsed to hear from every port of the world. This case is quite as strong as the cases above referred to, and I think the judge below was justified in assuming that the defendant was dead. The presumption of his death does not rest upon the fact that he had not been heard of

for seventeen months, but upon the weightier circumstance that the vessel has not been heard of. *King* v. *Paddock*, 18 John. 143. It has been suggested that she may have been lost or destroyed by pirates and the defendant have survived; that, considering the dangerous nature of the navigation in which he was engaged, and the character of the islands of the Pacific where he may have landed, it is not unreasonable to suppose that he may still be living.

The supposition that a man may be living is not unreasonable, where nothing is known to the contrary, until the natural limit of human life has been passed. It is possible that the defendant may be alive, but that would be possible fifty years hence. The question is not whether it is possible that he may be alive, but whether the circumstances of this case do not warrant that strong probability of his death upon which a court of justice should act. Forty years after the belief had become universal in Europe that the vessels of La Perouse and all on board of them had perished, discoveries were made rendering it highly probable that he and some of his companions had survived, and had lived for many years on one of the islands forming part of the great group through which the vessel of the defendant must have passed, in the successful prosecution of her voyage. The suggestion, that La Perouse might still be living, would have availed little in a French court, against the claim of his heirs to inherit. It would be presumed that he was dead, for courts of justice do not allow the consideration of possibilities to outweigh a case of strong probability, but adopt and act upon those presumptions which seem most in accordance with the ordinary and usual course of events. Presumption, founded in a reasonable probability, must prevail against mere possibilities, for, were it otherwise, the conclusion could never be arrived at that a man was dead, until the natural limit of human life had been reached. Suggestions, quite as well entitled to consideration as those now presented to the court, were offered in the cases of *Twemlow* v. *Oswin* and *Green* v. *Brown*, above referred to, but they were not allowed to prevail against the presumption

which was deemed the proper and reasonable one under the circumstances. Seventeen months having gone by since the defendant may be assumed to have departed upon a voyage, the ordinary limit of which is four months, and nothing having been since heard of the vessel or of those who were in her, the presumption must be that she is lost, and that the defendant and those on board have perished. A greater length of time would strengthen the probability, but sufficient has elapsed to warrant the court in adopting and acting upon that presumption.

The order appealed from is affirmed.

NOTE.—This case was decided at general term, April 3d, 1858, and the 8th of April the following paragraph appeared in the New York Daily Tribune:

"A LOST CAPTAIN FOUND.—The New York correspondent of The Boston Journal states that, some three years ago, the report reached New York that the ship Helena was lost. Her commander, Capt. Thompson, had with him his son, and left in New York his wife and several children. His cargo was a load of coolies; and it was believed that the cargo had risen and murdered the crew. The insurance office paid the policy, and an administrator was appointed for the estate. But Mrs. Thompson has had unwavering faith that her husband and son were alive, and would both return. This week a vessel arrived at this port, and states that they passed and hailed a vessel bound for China, which had on board Capt. Thompson and crew, of the Helena. The news has been hailed with joy, and public thanksgiving was given last Sabbath in the Mariners' Church."

Upon inquiry, however, it appeared that this was not the Capt. Thompson here referred to; nor has he or his vessel been heard from up to September, 1859.