WILLS—PROBATE—PROOF OF DEATH.
   Testator went in his yacht on a voyage of about 20 days, but never reached his
   destination, and neither the yacht nor any one on board was heard from afterwards,
   unless a similar vessel, sighted by a steam-ship 29 days after his departure, was his.
   On the day succeeding his departure, a great storm occurred, covering the prob-
   able situation of the yacht at that time, by which other vessels were lost, and some
   days after wreckage resembling a part of his vessel was found. Diligent, but in-
   effectual, inquiries were made up to the time of filing the petition for probate, six
   months after his departure. Held sufficient evidence of his death to warrant pro-
   bate of his will.[1]

Petition for the probate of the will of William A. W. Stewart, filed by the
executors named therein.

Stewart & Sheldon, for proponents.   R. E. Deyo, special guardian.

RANSOM, S.   This is an application for the probate of a paper propounded
as the last will and testament of William A. W. Stewart, and that letters tes-
tamentary issue to the executors therein named. Testimony has been duly
taken by me, which establishes the following facts: First. That Mr. Stewart
sailed from New York on the 10th day of March, 1888, at 3 P. M., in his yacht
Cythera. Second. His destination was Kingston, Jamaica. Third. The
length of time usually consumed in making the voyage from New York to
Kingston is 18 to 20 days. Fourth. Inquiries have been made by his family
at the offices of the West Indies steamers, and of the officers of those steam-
ers, for any news of the yacht, all of which have been futile, with one excep-
tion. Capt. Hubbard, commander of the steam-ship Barracanta, sailing reg-
ularly between New York and certain ports of the West Indies, reported that
on the 9th of April, this year, about 300 miles north of the island of St. Kitts,
he sighted, at 2 o'clock P. M., at a distance of eight or nine miles, a small ves-
sel, which he took to be yawl rigged, (the Cythera was yawl rigged,) bound
south, apparently headed for the Windward passage. No intelligence of this
vessel has ever been received from the point in which she was seen by Capt.
Hubbard. She should have made a harbor within a week. Cablegrams have
been sent to the testator, and to the custom-house authorities at Kingston
and the Azores, for news of the yacht. Those to the testator have never been
answered, and those to the custom-house authorities have been answered in
the negative. Letters to the testator have been written, and duly posted, to
Hamilton, Bermuda, and Kingston, Jamaica, and have all been returned by
the post-office officials, marked "Unclaimed." The day following the depart-
ure of the Cythera she was reported in the official maritime reports as having
been spoken Sunday morning, about 9 o'clock, 25 miles east of Barnegat,
bound south. Capt. Leonhard, of the bark Josie E. Moore, reported that
about March 25th he saw, 150 miles south by east of Highland lights, some

---

[1]As to the presumption of death arising from absence and silence, see Cox v. Ells
worth, (Neb.) 26 N. W. Rep. 460, and note; Stockbridge v. Stockbridge, (Mass.) 14 N.
E. Rep. 928.

cabin fittings of a small vessel, which, from his description, Pilot Nelson, one of the owners of the pilot-boat Enchantress, was convinced belonged to the Enchantress, which was lost in the same gale.  Forty miles south of that point Capt. Leonhard saw, at a distance of about 100 yards, a triangular piece of decking eight feet or thereabouts in length.  He described it as being the bow of a small vessel, the planks of which were not over three inches in width, and laid parallel to each other.  From this description Mr. Sheldon, who was familiar with the appearance and build of the Cythera, believed that this piece of wreckage was the forward hatchway of that yacht.  *Fifth.*  On the 11th day of March, at 10 P. M., the center of a great storm, commonly known as "the blizzard," was off the coast of Norfolk, Va.  *Sixth.*  The probable situation of the Cythera at 10 P. M. on March 11th was between Cape Henry and Cape Hatteras, if not within the center, at least within the radius, of this storm.  Hearsay evidence of Capt. Leonhard and Capt. Hubbard has been offered and received, and under the decisions may be considered.  *Fosgate* v. *Hydraulic Co.*, 12 Barb. 352; *Jackson* v. *Boneham*, 15 Johns. 226.  This evidence, however, is not of much importance, except that it shows the family and friends of the testator have made every effort, and exhausted apparently every source of information, to ascertain news of him and the Cythera, but without success.

It is well settled that it is not necessary that any specific period should elapse to create the presumption of death, but that it may arise whenever the facts of the case will warrant it.  *Stouvenel* v. *Stephens*, 2 Daly, 319.  And if the party whose death is in question went to sea, and nothing has been heard of the vessel in which he sailed, or of those who accompanied him, the presumption, after a sufficient length of time has elapsed, will be that the vessel was lost, and that all on board perished.  *Merritt* v. *Thompson*, 1 Hilt. 553, and cases cited.  Where, when last heard from, one was in contact with some specific peril, this circumstance may raise a presumption of death, without regard to the duration of the absence.  *Lancaster* v. *Insurance Co.*, 62 Mo. 121; *White* v. *Mann*, 26 Me. 361.  In *Merritt* v. *Thompson, supra,* it was held that the presumption of death does not rest upon the fact that the party had not been heard from for 17 months, but on the weightier circumstance that the vessel had not been heard from.  In *Gerry* v. *Post,* 13 How. Pr. 118, it was held that, if a vessel has been absent double the longest time of a voyage, she may be presumed to be lost; and it follows, as a consequence, that all perished with her, if none of the passengers or crew are afterwards heard of.

On March 11, 1841, one Leo Wolf departed from New York in the steamship President.  Nothing was heard of the vessel or of her passengers.  The usual time to cross the Atlantic was 14 or 15 days, and the longest passages did not exceed 23 or 24 days.  It was held that the steamer was lost before May, 1841, and that Leo Wolf's death occurred before that time.  *Oppenheim* v. *Wolf,* 3 Sandf. Ch. 623.  I am convinced by the evidence that Mr. Stewart is dead, and that his death occurred between the 10th day of March, 1888, and the 17th day of September, 1888, the date of the petition herein.  The due execution of the paper propounded as his last will and testament, and his mental capacity to make the same, are shown by the testimony of Mr. Nichols and Mr. Minturn, the subscribing witnesses thereto.  It is admitted to probate.