## *In re* MILLER'S ESTATE.

### (*Surrogate's Court, New York County.* March 17, 1890.)

DEATH—PRESUMPTION FROM ABSENCE.

Where a woman 18 year of age, illiterate, with vicious propensities, and abandoned by her parents when quite young, escapes from an orphan asylum in which she is confined, no presumption of death arises from the fact that she has failed to answer advertisements inserted in various papers, and that for more than seven years since her escape all trace of her whereabouts has been lost.

On exception to report of referee in the matter of the estate of Ann E. Miller, deceased.

*Lucius C. Ashley*, for executor and testamentary trustee. *Lewis J. Conlan*, for special guardian. *Joseph W. Gott*, (*Henry Major*, of counsel,) for administrator and others.

RANSOM, S. A single question is presented by the exception of the executor to the report of the referee. By the will of the testatrix, the sum of $20,000 was bequeathed for life to her mother, the remainder to be distributed equally between the children of her brothers. One of these brothers, named David Mann, had two children. Upon the first hearing before the referee the father testified that the existence and whereabout of these two children were unknown to him; that he had not heard from them for many years. The matter was sent back to the referee for the purpose of obtaining proof which would support the presumption of the death of these two children, and authorize a distribution of the estate accordingly. Pending the reference, one of

these two children put in an appearance, and the inquiry thereafter was confined to her identification as the niece of the testatrix; and the proof as to the other, Ellen Dale Mann, simply referred to her absence, and the lack of knowledge as to her whereabout. This child was the second daughter of David A. Mann, by his wife, Nancy Carr, and was born about the year 1862. When she was about two years old, her father abandoned her mother; and after such abandonment she remained for some time with her mother, when her father took her away. Since that time the mother has never beheld her. After her removal by her father, and while still a child of tender years, she was placed in an almhouse in Orange county, near Goshen, by the woman with whom her father was living. From this place, she was removed by a Mrs. Parfitt, who took her to her home at Washingtonville, in the same county. With her she remained for a period of eight or ten years, and while residing there was generally known as Annie Parfitt. Mrs. Parfitt testifies that, during the latter portion of the time when she lived with her, she was wild and unruly, had acquired the habit of drinking, and was very rough; that she was accustomed to be out late at night, and in bad company, and sometimes for two or three nights at a time. Upon one occasion, she testifies that Annie stole a horse, and for this offense was sent by the justice of the peace to the house of refuge. She was taken thence by Mrs. Parfitt, who was anxious to give her another chance for reform. Her bad habits continuing, she consulted the clergyman of that vicinity, by whose advice she was sent to the orphan asylum in New York city. After staying there about eight weeks, she managed to escape by securing possession of the keys, taking with her some clothing; and since that time all trace of her has been lost. Mrs. Parfitt, upon learning of her escape from the institution, endeavored to ascertain her whereabout, and consulted Inspector Byrnes, who promised to look her up; but nothing was ever heard from her after that. There is no testimony as to the extent or method of inquiry by the police. At the time of her disappearance, she was in the neighborhood of 18 years of age. Since this reference has been pending the executor's counsel has sought, by means of advertisements in various papers which were deemed best calculated to secure her attention, to obtain her presence in the proceeding, but without success. The referee decided that, owing to her disappearance and the failure on her part to communicate with her relatives for more than seven years, a presumption of death without issue arose. On behalf of the executor, however, it is contended that the referee bases his conclusion on section 841 of the Code. He claims that this section applies only to real property. He likewise contends that all the cases in the books where the presumption has been supported were cases where sea voyages had been undertaken by the alleged decedent, or he had departed for distant lands or beyond the sea.

I am of opinion, however, that the presumption cannot arise in this case. My conclusion is founded upon the following cases, and the foregoing considerations, as well as those which follow. The presumption does not arise where it is improbable there would have been any communication with home. 1 Amer. & Eng. Cyclop. Law, 41, note 1, and cases cited. And see *Re Tobin*, 15 N. Y. St. Rep. 749. From the facts stated above as to the character and habits of the alleged decedent, and the manner of her disappearance, it is extremely improbable that she would have been desirous to communicate either with Mrs. Parfitt or with her relatives. On the streets of a large city, without money, without friends, with no moral training and no education, and with the vicious propensities which are hereafter described, it requires no suggestion on my part to imagine the fate that overtook her. It appears in the evidence that her father left her mother for another woman, taking his children with him. Thereafter he abandoned his children to the tender mercies of the poor-house. The mother, since her husband left her, disregarding her marriage vows, has been living in adulterous intercourse with another

man.   The value of the advertisements which appear to have been made for the purpose of securing knowledge as to Annie's whereabout is completely destroyed by the lack of evidence as to her ability to read.  The inference that she was unable to do so is almost irresistible.   The elder sister, whose opportunities were certainly equal, if not superior, was put upon the stand, and testified that she was unable to write, and could read but very little.  She was ignorant of the meaning of the word "witness," and was unable to say what those people were termed who were called upon to give evidence upon a trial.  She was likewise ignorant of the meaning of the word "testimony."   Some testimony was given by the mother of Annie to the effect that, when she last saw her, she was two or three years old, and that the attending physician said she could not live,—that it was impossible for her to live.   She also testified that the child was suffering from a female complaint which was incurable, and that she was born with this malady.   The nature of the disease, however, is not stated.  It is proven that she lived to the age of 18 or 19 years, and was sufficiently active to steal a horse, and to get out of the house at night by means of the window.  I think this testimony of the mother is of no value.  The decisions enjoin and emphasize the necessity for proceeding with abundant precaution before the presumption of death is entertained.  In the present case, the opinion I have formed is intensified by the consideration that, after the executor had abandoned all expectation of discovering either of the children, the elder appeared in the proceeding, and established her identity.  The exception of the executor to the report of the referee is sustained.