VAN WILLIAMS v. ELIAS et al.

(Supreme Court, Appellate Division, Third Department.   June 29, 1905.)

1. PARTITION—PARTIES.

Testator devised certain real estate to trustees for the use of his widow for life; then to be held by the trustees until his grandson should arrive at the age of 25 years; then to be divided between testator's grandson and granddaughter; and, if either should die before that time, the issue of the one so dying should be entitled to the share of his or her parent.

*Held*, that in a suit for partition after the grandson had absconded, leaving a wife and infant child, before he arrived at the age of 25, not brought until after he would have arrived at such age if alive, such child was a necessary party.

**2. SAME—PRESUMPTIONS.**

The presumption that the grandson, who was an electric lineman, lived from the time he absconded until he arrived at the age of 25 years, was not sufficiently strong to render title to land based thereon free from reasonable doubt.

**3. SAME—PARTIES—INFANTS—GUARDIAN AD LITEM—APPOINTMENT.**

Code Civ. Proc. § 471, provides that an infant defendant must appear by guardian, who must be appointed on the application of the infant, if 14 years of age or upwards, and applies within 20 days after personal service of the summons, or if under that age, or neglecting so to apply, on the application of any other party to the action, or a relative or friend of the infant. *Held*, that an appointment of a guardian for an infant under 14 years of age could not be sustained as an appointment under such section where no summons had at any time been served on such infant.

**4. SAME—PETITION.**

Where a petition for the appointment of a guardian for an infant in a suit for partition of real property did not show that the infant had any personal interest in the property, but a mere possibility of an interest in case her father, who had absconded, was dead, and the infant was not a party to the suit, such petition was not sustainable under Code Civ. Proc. § 452, authorizing the application to be made by a person who has an interest in the subject thereof, or in real property, the title to which may in any manner be affected by the judgment.

**5. SAME—GENERAL GUARDIAN—NOTICE.**

Where a petition for the appointment of a guardian ad litem for an infant three years of age did not allege whether the infant had any general or testamentary guardian, with whom the infant resided, or that notice had been given to her general or testamentary guardian, it was fatally defective.

Appeal from Special Term, Ulster County.

Petition by Myrtle Van Williams against William Adam Elias and others. From an order denying the motion of purchasers at the sale to be relieved from the purchase, they appeal. Reversed.

The property which was the subject of the partition action was formerly the property of one Leonard Elias, who died on July 13, 1896, leaving, him surviving, his wife, Mary Elias, and two grandchildren—one, Mary Elias; and the other, William Adam Elias. By the will the property is vested in trustees for the use and benefit of his widow, Mary Elias, for and during her life, and after her death to be held by said trustees until William Adam Elias should arrive at the age of 25 years, or until his death before attaining such age. The third provision, as far as material to this controversy, reads as follows: "Third. And on my grandson, William Adam, attaining the age of twenty-five years as aforesaid, I give, devise and bequeath all my said property to my said granddaughter, Mary, and my said grandson, William Adam, in equal shares. * * * If either said William Adam or my granddaughter, Mary, shall die as aforesaid, leaving lawful issue surviving, such issue shall take at the expiration of said trust, the same portion of my estate that the granddaughter or grandson, so dying, would have taken if she or he had survived the expiration of such trust." Mary Elias, the widow, died about two years after the death of her husband. Mary Elias, the granddaughter, married Cameron Van Williams, and died upon March 8, 1903, leaving, her surviving, one child, the plaintiff in the partition action, Myrtle Van Williams. The grandson William Adam Elias would have become 25 years of age upon the 2d day of August, 1904. Upon the 11th day of December, 1902, however, he, having been a defaulter, left the country,

and has never been heard of since. He left a wife, Mabel A. Elias, and one child, Beatrice Elias, an infant between 2 and 3 years old at the time of the judgment in partition. The action of partition was brought after the 2d day of August, 1904, at which time William Adam Elias reached, if living, the age of 25 years. Beatrice Elias, the daughter of William Adam Elias, was not originally made a party to the action. The summons was served upon William Adam Elias by publication upon affidavits showing that he had departed from the state, and his whereabouts unknown. Subsequently, before the interlocutory judgment, upon petition of Mabel Elias as next friend, one Emma Hutton was appointed guardian ad litem of the said Beatrice Elias, and the said Beatrice was ordered brought in as a party defendant in the action, and the summons and complaint were ordered amended by inserting the said name of said Beatrice Elias as party defendant, with leave to serve an answer in the action. Thereafter the general answer was served by the guardian ad litem, and in the judgment afterwards rendered it was determined that William Adam Elias was alive at the time he reached 25 years of age, and was entitled to one-half interest in said premises, subject to the inchoate right of dower of his wife, Mabel Elias. The sale was had under the judgment under which the appellants Hamilton and Osterhoudt became purchasers. Thereafter they made application to be relieved from the purchase upon three grounds: "(1) That one Beatrice Elias, an infant, was a necessary party to the action herein; but said infant was not properly or legally brought into this action by service of a summons, and is not bound by the judgment herein or by the sale of such property. (2) That the property herein involved was subject to a valid, existing, and mandatory power of sale vested in Wesley D. Hale, the executor and trustee of and under the will of Leonard Elias, deceased, which was a legal bar to this action. (3) That said Wesley D. Hale, as such executor and trustee of and under the will of Leonard Elias, was a necessary party defendant to this action, but he was not so made a party, and is not bound by any proceedings herein." This motion was by the Special Term denied, and from the order denying said motion this appeal is taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Joseph M. Fowler, for appellants.
J. W. Searing, for respondent.

SMITH, J. Wesley D. Hale, as trustee under the will of Leonard Elias, was discharged by decree of the Surrogate's Court in November, 1904. The action of partition was brought September 26th, prior thereto. Even though a necessary party at the commencement of the action, his subsequent discharge before the judgment would seem to have divested him of all interest in the controversy.

That Beatrice was a necessary party to this action, in order to convey a perfect title, would seem to be undoubted. William Adam Elias took no title whatever unless he was living upon the 2d day of August, 1904, at which time he would have become 25 years of age. Upon December 11, 1902, he left the state, and was never heard from thereafter. Respondent's argument rests in part upon the presumption that he is still living. While such may be the fair presumption as applied to a man 26 years of age, in good health, it is very far from conclusive. The business in which he proposed to engage—that of a lineman in placing wires for the carrying of electricity—is one extremely dangerous. His failure for over two years to send any moneys to his wife or little child for their support, or to communicate with them, is unnatural in a normal man.

The presumption, therefore, that he is still living, or was living upon the 2d day of August, 1904, when, if living, he would become entitled to a half interest in this property, is not alone sufficiently strong to give security to any title upon a sale in a partition action. If it should afterwards be proven that his death had occurred prior to August 2, 1904, these purchasers would find themselves with title to only a half interest in the property, while Beatrice would hold the other half interest. No reasonably cautious man would dare to loan moneys, either of his own or of a trust fund, upon any such title. It is not free from reasonable doubt, and is not such a title as the law will compel a purchaser to accept. In Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634, it appeared that the premises in question belonged to one R., who died intestate in 1853, leaving a widow and two sons, W. and G. The latter, in 1863, when about 22 years of age, being unmarried, in poor health, dissipated, and not in business, disappeared, and has not been heard of since. In April, 1875, his mother and brother conveyed to plaintiff's grantors by a deed which recited that they were the sole heirs at law of R. Held, that the title was not marketable, and defendant could not be compelled to complete his purchase. Brown, J., in writing for the court, says:

"A marketable title is one that is free from reasonable doubt. There is a reasonable doubt when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt must be such as affects the value of the land or will interfere with its sale. A purchaser is not to be compelled to take property, the possession of which he may be compelled to defend by litigation. He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value. [Citing authorities.] If a title depends upon a fact which is not capable of satisfactory proof, a purchaser cannot be compelled to take it. [Citing Shriver v. Shriver, 86 N. Y. 575.]"

In that case it was held that the presumption of death arising from the absence of 24 years was not sufficient upon which to create a marketable title. Respondent relies upon this authority as showing the strength of the presumption that William Adam Elias is alive. I read in the case, however, no support for the respondent's claim. The principle seems to be there established that a title is not fairly marketable which rests merely upon a presumption, unless such presumption rests so firmly upon facts that practically no doubt whatever exists as to the existence of the fact presumed. Respondent argues that, if this rule be held so strictly, few titles could be found marketable, because in many cases parties are absent and cannot be found, and service of the summons must be made by publication. In those cases, however, the sale is good and the title marketable, because the proceeds of the sale are placed with the county treasurer, subject to the order of the defendant so served, or of his personal representatives. This provision of law found in section 1582 of the Code of Civil Procedure is further urged in support of respondent's contention that this title is marketable, although Beatrice be not properly a party to the action. It will be observed, however, that the moneys are placed in the hands of the county treasurer subject to the order of William Adam Elias or

his representatives. They could not be reached by Beatrice Elias even upon proof that her father died before he became 25 years of age. Moreover, there appear judgments in this action in large amounts against William Adam Elias, which must be paid from this deposit with the county treasurer unless proof can forthwith be found that he died before the 2d day of August, 1904. It will be seen, therefore, that this section of the Code of Civil Procedure gives no protection whatever to Beatrice Elias in case it should afterwards appear that her father had died before reaching the age of 25 years.

This plaintiff is not remediless. She could have brought this action, alleging the doubt in this title, and making William Adam Elias and Beatrice Elias both parties to the action. In such case the sale would undoubtedly be free from the claims of either one. The judgment itself would be a bar to all claims by both against the property, and a good title could be given upon a sale in such an action. Or, if Beatrice Elias is properly made a party defendant in this action, she is bound by the judgment, and the title is undoubtedly good. This brings us to the further question in the case—whether Beatrice was properly made a party defendant, so as to be bound by the judgment herein.

By section 471 of the Code of Civil Procedure it is provided that an infant defendant must also appear by guardian, who must be appointed upon the application of the infant, if the infant be 14 years or upwards, and applies within 20 days after personal service of the summons, or if he is under that age, or neglects so to apply, upon the application of any other party to the action, or of a relative or friend of the infant. By section 452 of the Code of Civil Procedure it is provided:

"Where a person not a party to the action has an interest in the subject thereof or in the real property, the title to which may in any manner be affected by the judgment * * * and makes application to the court to be made a party, it must direct him to be brought in by the proper amendment."

Section 453 provides that where the court directs a new defendant to be brought in, and the order is not made upon his own application, a supplemental summons must be issued, directed to him, and in the same form as an original summons. No summons was at any time served upon this infant. The appointment of this guardian ad litem cannot be sustained as an appointment for an infant defendant under section 471 of the Code. Such an appointment, it would seem, could only be made after service of the summons upon the infant. See Ingersoll v. Mangam, 84 N. Y. 625. It is claimed, however, that this rule cannot apply where an application is made by the infant itself under section 452, above referred to. Counsel for the appellant, however, insists, if Beatrice had been made a party defendant under this section, that the summons must still have been served upon her, under section 453 of the Code, because she was not so made a party upon her own application, but upon the application of Mabel Elias, acting as her next friend. Whether or not there be any force in this claim, we are of the opin-

ion that the petition for the appointment of the guardian does not bring the application within the conditions of section 452 of the Code. That section authorizes the application to be made by a person who "has an interest in the subject thereof or in the real property, the title to which may in any manner be affected by the judgment." The petition for the appointment of a guardian for Beatrice does not show the existence of any interest in this real property. It shows simply a possibility of an interest in this property. Moreover, no interest which she may have in the property could be affected by a judgment in an action to which she was not a party. It would seem, therefore, that the conditions did not exist, giving her the right to intervene in the action under this section. As against an infant the Code provisions will be construed strictly, and if she has not a legal interest in the property, and so has not been properly brought in, she will not be held hereafter to be bound by this judgment. It must at least be said that there is grave doubt as to whether her friend, in making application for the appointment of the guardian, has shown facts to bring her within the conditions named in this section.

But there is another defect in these papers for the appointment of this guardian. Whether a guardian be appointed for an infant plaintiff or an infant defendant, the law requires, if the application be made by some person other than the infant, that notice shall be given to his general or testamentary guardian, or, if he has none, to the person with whom the infant resides. There is no recital in the order appointing the guardian of notice having been given to any one. Nor is there any allegation in the petition showing whether the infant had any general or testamentary guardian, or with whom the said infant resides. It may be claimed that, because the infant was only between two and three years of age, she would be presumed to be living with her mother, who makes the application for the appointment. Such presumption cannot be indulged in for the purpose of sustaining this order, to make valid this title, and forever bar the infant from all right to question the same. With the mother left penniless, the infant might well be residing with some other person, to whom the law would require notice before the guardian ad litem could be appointed, especially where, as in this case, the interest of this mother is to an extent antagonistic to the interest of this infant daughter. The courts would not, in my judgment, hold this infant bound by a judgment in which the order appointing the guardian ad litem did not show the necessary notice which would authorize the granting of such order, and in which the facts showing upon whom proper service should be made did not appear in the petition of a relative or friend for such appointment.

Our conclusion is that this title is not free from doubt, and the purchasers should not be compelled to accept the same. The order of the Special Term should be reversed, with $10 costs and disbursements, and the motion granted, and the matter remitted to Special Term to determine what costs and expenses should be allowed the

purchasers in addition to the repayment of the deposit made upon the purchase.

Order reversed, with $10 costs and disbursements, and motion granted, and matter remitted to the Special Term to determine what costs and expenses should be allowed to the purchaser in addition to the repayment of the deposit made upon the purchase. All concur; CHASE, J., in result.