Decreed accordingly.

(96 Misc. Rep. 152)

## In re NORTON.

(Surrogate's Court, New York County. June 14, 1916.)

1. TAXATION ☞860—TRANSFER TAX—"RESIDENCE"—"DOMICILE."

The word "residence," as used in the Transfer Tax Law, means "domicile."

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1675; Dec. Dig. ☞860.

For other definitions, see Words and Phrases, First and Second Series, Residence.]

2. DOMICILE ☞1—NATURE AND MEANING.

"Domicile" is not a term of the common law strictissimi juris, but is a term of public law, and without reference to public law it has no sensible significance. The term, taken strictly, means, at the present day, international domicile, as, in order to be effective, one's domicile should confer an international status. There is no precise definition thereof, and the generally accepted definition that the elements of domicile are residence and animus manendi affords only a partial solution of the principle of domicile, when applied to complicated cases.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 1; Dec. Dig. ☞1.

For other definitions, see Words and Phrases, First and Second Series, Domicile.]

3. COMMON LAW ☞1—TERMS.

Common-law terms find their authority and meaning only in the common law itself, and such terms form in bulk the terminology of the common law itself.

[Ed. Note.—For other cases, see Common Law, Cent. Dig. §§ 1, 2; Dec. Dig. ☞1.]

4. DOMICILE ☞2—DISTINGUISHED FROM RESIDENCE.

While one may have many residences, he can have but one domicile.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 2; Dec. Dig. ☞2.]

5. DOMICILE ☞3—DOMICILE OF ORIGIN.

Where there is any doubt as to a domicile, the domicile of origin always reverts.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 3; Dec. Dig. ☞3.]

6. DOMICILE ☞10—SUFFICIENCY OF EVIDENCE.

Evidence in a proceeding certified to the surrogate under the Transfer Tax Law *held* to show that the domicile, or last legal residence, of the deceased was in the state of New York.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 39; Dec. Dig. ☞10.]

7. DOMICILE ☞8—EVIDENCE—BURDEN OF PROOF.

Where it appeared that the decedent, in or about 1904, acquired a domicile of choice in New York state, the burden of showing a change of such domicile was on those asserting it.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 36, 37; Dec. Dig. ☞8.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Proceeding certified under the Transfer Tax Law for the determination of the last legal residence of Edwin Norton, deceased. Decedent's last domicile and legal residence determined to be in the state of New York.

Kidder, Ayres & Riggs, of New York City (C. G. Kidder, C. H. Ayres, and Lawrason Riggs, Jr., all of New York City, of counsel), for executrix.

William H. Kinnear, of Brooklyn, for state comptroller.

FOWLER, S. This is a proceeding certified to the surrogate under the Transfer Tax Law in order that he may determine the last legal residence of Edwin Norton, deceased. The state comptroller contends that the decedent died a resident of this state, while the executors contend that he died a resident of the Island of Bermuda, British territory. Under our Tax Law, if the decedent at the time of his death was a resident of this state, all his personal property, wherever situated, would be subject to the transfer tax of this state, while if he died a resident of Bermuda the only part of his estate which would be taxable under the laws of this state would be his tangible personal property actually within this state. The question of last residence must therefore be determined by the surrogate before a tax can be assessed upon the estate. This matter involves the meaning of the term "resident" in the Transfer Tax Law.

In Matter of Martin, 94 Misc. Rep. 81, 157 N. Y. Supp. 474, I endeavored to show, with some particularity, that the terms "residence" and "domicile" are, in our law, at times to be regarded as synonymous and at others to be differentiated. Certainly the differences of meaning of the terms "residence" and "domicile" are often easily perceptible, and yet at other times most difficult to contrast. Matter of Mesa y Hernandez, 87 Misc. Rep. at page 252, 149 N. Y. Supp. 536. The authorities, some of them cited by me in Matter of Martin, and others not there cited, seemed to me to authorize the conclusion that "domicile" and "residence" are not equivalents under the Transfer Tax Law now in force. Frost v. Brisbin, 19 Wend. 11, 32 Am. Dec. 423. In Matter of Morgan, 159 N. Y. Supp. 105, I pointed out that the character gained by residence ceases by nonresidence. It is an adventitious character and no longer adheres to one from the moment he puts himself in motion bona fide to quit the country sine animo revertendi. In the same judgment I endeavored to show that the right of New York as a state of the Union to impose a transfer tax under our federal system of government was predicated primarily of the protection afforded by this state to residents or to nonresidents who choose to leave their goods and property within this state, while not personally residing here. I then thought that the principle of domicile, while highly illustrative, did not conclude a residence for the purpose of taxation.

[1] I am convinced that my reasoning was not devoid of authority, at least if we would give any weight to those higher sources of law usually regarded in other countries as controlling on questions of domicile and commorancy. But in the course of this opinion I shall have

to revise my conclusion in the light of several late adjudications which define the term "residence" as used in the Transfer Tax Law as a domicile. They hold, in other words, that a man's residence means his domicile. Before proceeding to the facts disclosed here, and the application of the late decisions to which I allude, let me review, for a moment, the state of the law bearing upon the principle of domicile, for that is now made particularly necessary by such late decisions of our own state.

[2] The term "domicile," taken strictly, means at the present day international domicile. The term "domestic domicile" is infelicitous, to say the least. Domicile simpliciter, by reason of its inherent vagueness, is at present more accurately expressed by a circumlocution. Most jurists refer a question offered for solution to the "principle of domicile" rather than to "domicile." See Bentwich, Law of Domicile, passim, followed in Matter of Grant, 83 Misc. Rep. at page 261, 144 N. Y. Supp. 567. It has been said that the definition of "domicile" is a matter of great difficulty, and also that there is no precise definition of domicile. Cockrell v. Cockrell, 25 L. J. Ch. 730. Westlake so states, which I think is conclusive. But the publicist Dicey at one period dissented from this statement and affirmed that "the elements of domicile are residence and animus manendi." It is extremely doubtful if this simple definition is adequate to very complex conditions of fact. It is often important that a person shall have a defined juristic domicile for purposes of taxation, succession, jurisdiction, etc., but above all for international purposes. But usually commorancy or residence suffices. In reference to some of these purposes Mr. Dicey's simpler definition does not respond to legal requirements. He has, however, given us a later and more complex definition generally acquiesced in in common-law countries. I had occasion to quote Mr. Dicey's larger definition of domicile in Matter of Robitaille, 78 Misc. Rep. at page 112, 138 N. Y. Supp. 391, and I need not repeat it, but even that more comprehensive definition affords only a partial solution of the principle of domicile when applied to complicated cases. When we reflect on the principle of domicile it is evident that a man's domicile, in order to be effective, must be a domicile everywhere recognized or at least recognized as fixing a status in the various jurisdictions or sovereignties to which he resorts from time to time. Otherwise the recognition is nothing but a recognition of his commorancy. Thus a man's domicile should confer an international status, as domicile is not properly a matter of purely local concern.

In Roman law "domicilium," from domus, a home, was employed to denote the ordinary jurisdiction to which a person was subject. It was later conceded by the civilians that a person might have as many domiciles as he had residences possessing some degree of permanence. It was only in modern Roman law that domicile came to have a fixed significance associated with a particular locality. Indeed, it may be said, I think, that it was the conflict of laws peculiar to complex modern political conditions that gave rise to the present conception of domicile. When domicile can be treated as the equivalent of nationality, there is no difficulty at all about the term. But in this country and in

the British Empire, or indeed in any highly organized federal state, such a simple resolution of so complex a matter is impossible. It is therefore greatly to be doubted that as a solution of the true incidence of taxation, we are much benefited by the substitution of "domcile" for residence as the supreme test of a liability to tax. Commorancy is the logical basis of taxation.

[3] "Domicile" is not a term of the common law strictissimi juris. It is a term of public law, and without reference to public law it has no sensible significance. We are all familiar with the rule that common-law terms finds their authority and meaning only in the common law itself. Such terms form in bulk the terminology of the common law itself. Despard v. Churchill, 53 N. Y. 192, 199; Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21; Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425; Waters & Co. v. Gerard, 189 N. Y. 302, 309, 82 N. E. 143, 24 L. R. A. (N. S.) 958, 121 Am. St. Rep. 886, 12 Ann. Cas. 397.

As I stated before, I had concluded in several cases that domicile was not the precise equivalent of residence, or commorancy, in the Transfer Tax Law, although I conceded that the principle of domicile was highly illustrative of both a residence de jure and a residence de facto, and I did not hesitate to refer to the principle of domicile for illustration and guidance in the solution of questions involving residence. But, of course, I am not free to follow my own conclusions if they conflict in any respect with the judgments pronounced in the higher judicatories of this state. Consequently, I must address myself to the agreeable task of ascertaining whether or not there is any settled and binding rule in this state which will relieve me from the necessity of entertaining any opinion of my own on a matter of great delicacy and greater importance.

[4, 5] Very lately there have been several important opinions, delivered by the Appellate Divisions of different departments in this state which command my attention, as they appear to me to be particularly relevant to the questions involved in this matter now here for my solution. In both these cases it was unequivocally held, I think, that a man's legal residence was determined by his domicile: Matter of the Application for the Removal from the Registry List, etc., of the names of J. Frank Rooney et al., 159 N. Y. Supp. 132; Matter of Martin, 158. N. Y. Supp. 915 (opinion App. Div., First Dept., April, 1916). I somewhat fear that these decisions are going to defeat the state from the collection of much well-earned revenue, for while a man may have many "residences" he can have only one domicile. So where there is any doubt on a domicile, the domicile of origin always reverts. Not so of residence.

With these latest decisions of our own courts only in view I will proceed to the facts disclosed to me in this matter now here for adjudication, premising the transfer tax appraiser, who was designated by this court to appraise the estate, took the testimony of witnesses produced on behalf of the estate to prove that the decedent had his last legal residence in Bermuda. Several affidavits and copies of letters and legal documents were also submitted to the appraiser. All the parties to the proceeding have stipulated that the testimony taken be-

fore such appraiser, including the affidavits submitted to him, may be considered by me in determining the question of decedent's last legal residence, in the same manner and to the same effect as if the witnesses had been examined before me.

[6] The testimony taken and the affidavits and documents so submitted show that the decedent's domicile of origin was in Illinois, and that he actually resided in Illinois until 1901, when he sold his dwelling house in Illinois and came to New York City. He lodged at hotels in New York City from 1901 until 1904. In the latter year he purchased a house on Riverside Drive, in this city, furnished it as a home and occupied it as a residence. In December, 1904, he purchased another house at Lake Placid, N. Y., and furnished it as a summer home. From 1904 to 1910 he owned both the house in New York City and the summer house at Lake Placid, and during that period he did not own a dwelling house in any other state. In various legal documents executed by decedent between the years 1904 and 1910 he described himself as of New York City. He was assessed on personal property in this city and paid the tax in 1909 and 1910. In January, 1910, he went to Bermuda, and on May 10, 1910, he purchased a dwelling house and several acres of land there. He sold his Riverside Drive house during the same year. During 1910 and 1911 the Lake Placid house was leased, and in 1912 it was sold. He remained in Bermuda practically the entire year, 1911. During 1912 he made several trips to the United States for business purposes, but he did not remain in this state for more than a few days. He spent the summer of 1913 in Europe, and returned to Bermuda in the autumn. In June, 1914, he told his son-in-law that his wife wished to have some place in New York City to which she could take her two servant maids when traveling through the city instead of stopping at hotels, and thereupon an apartment at No. 640 West End avenue was rented for a term of three years. The lease was signed by Mrs. Norton and by the decedent, the signature of the latter having been made by his son-in-law as his attorney. The decedent paid the rent of the apartment.

On August 12, 1914, the decedent applied for a passport when contemplating a trip to Europe for the purpose of aiding his wife to return to the United States, and in his application he stated that he was domiciled in the United States, and that his permanent residence was in New York City. This statement does not, however, coincide with the fact. In September, 1914, after Mrs. Norton had returned from Europe, she removed her personal belongings from the Biltmore Hotel to the apartment at 640 West End avenue. The decedent traveled in connection with his business from September 10 until October 28, 1914. On the latter date he returned to this city and went to his wife's apartment at 640 West End avenue. He made arrangements for going to Bermuda in the early part of December following, but he was ill at that time and he died at the apartment 640 West End avenue on December 31, 1914.

In 1913 the decedent had purchased property in Bermuda, and in the deed he described himself as "of Bermuda." He frequently thereafter referred to Bermuda as his residence. In 1911 he was assessed for

personal property in this city and made affidavit stating that he had ceased to be a resident of New York and had been for a year prior to 1911 a legal resident of Bermuda. In various applications for letters patent made by him during the years 1913 and 1914 he stated that he was a resident of Bermuda, although on September 10, 1914, he gave New York as his address in an application for a Canadian patent. In a postscript to a letter dated August 10, 1914, after the outbreak of the European war, he stated: "America looks pretty good to me for the future." From the foregoing facts it would appear that the decedent acquired a residence in New York about the year 1901, and that he resided in this state up to the time he sold his Riverside Drive home in 1910. The purchase of a home in Bermuda after he had sold his summer and winter houses in New York, and the fact that he described himself in several legal documents as of Bermuda, would seem to indicate that he intended to abandon his residence in New York and acquire a new residence in Bermuda. I think he actually did acquire a residence in Bermuda facto et animo. Whether, however, he intended by renting the apartment on West End avenue in 1914 to again take up a residence in New York is a question perhaps involved in some doubt. The testimony which was given to explain the rental of the apartment on West End avenue for three years would seem to indicate that the place was rented as a matter of convenience for Mrs. Norton only; but the statement by the decedent in his application for a passport that he was a permanent resident of New York City, coupled with the postscript to the letter of August 10, 1914, wherein he stated that "America looks pretty good to me for the future," somewhat conflicts with this and might seem to indicate that he contemplated returning to the United States and again making New York his principal place of residence and abandoning Bermuda. But no actual abandonment is shown.

[7] Such are the principal facts. If my solution were permitted to turn upon "commorancy," or the last legal "residence" of this decedent, I should find that it was Bermuda, and that even the conflicting statements of decedent, made for national purposes, should not be allowed to estop those succeeding to his estate and now vested with it by right of succession from showing the real fact as to decedent's last residence. But, in view of the late decisions cited above, I feel constrained to find that the last domicile of decedent shown by the evidence was in New York. It appears that the decedent in or about 1904 acquired a "domicile" of choice in New York state. This being so, the onus of showing a change of such domicile is on those asserting it. Matter of Wise, 84 Misc. Rep. 663, 146 N. Y. Supp. 789. This burden has not been sustained, and therefore the decedent's last established domicile of choice is presumed to continue. I therefore find that the decedent's last "domicile" was in the state of New York, and not in Bermuda. This conclusion by the late decisions of this state cited determines also that decedent's last legal residence was in New York state.