## In the Matter of the Estate of JACOB KATZ, Deceased.

Surrogate's Court, Kings County, January 29, 1930.

*George A. Colvin,* for the petitioner.

WINGATE, S. This is a petition for letters of administration upon the estate of an absentee who is alleged to have disappeared from his residence in Brooklyn on March 15, 1921, and not to have been since heard from. The petitioner predicates her application, in part, upon subdivision 2 of section 119 of the Surrogate's Court Act, as amended by chapter 229 of the Laws of 1929. It will be noted, however, from section 21 of this chapter (page 519)

that this amendment applies only to the estates of persons dying after August 31, 1930, for which reason it is not applicable to the instant case.

The statute now in force relevant to the question presented is section 341 of the Civil Practice Act, which reads as follows:

" § 341. Presumption of death in certain cases. A person possessed of personal property in this state or upon whose life an estate in real property depends, who remains without the United States, or absents himself in the state or elsewhere for seven years together, is presumed to be dead, in an action or special proceeding concerning such property or the administration of the estate of such person, unless it is affirmatively proved that he was alive within that time."

This provision was derived from section 841 of the Code of Civil Procedure, the enactment in question being the first sentence, without change, of the Code provision in force at the time of the adoption of the Civil Practice Act. This section, as originally inserted in the Code by the Laws of 1877, applied only to real property, the addition of the words " possessed of personal property in this state or " having been made by chapter 318 of the Laws of 1918. This addition was merely declaratory of the law as previously existing, since the courts of the State had from early times followed the example of the tribunals of the mother country in applying the rule of presumption to personal property by analogy.

It may be said without fear of successful contradiction, that there are few questions in the law upon which the conceptions of a majority of the bar are less clear than on that of a presumption of death from absence. This is no doubt due in part to the circumstance that determinations on such questions are based largely on the facts presented in the particular cases, no two of which are quite alike, but a material contributing factor has unquestionably been the frequently contradictory enunciation of legal principles by the courts. A member of the bar may well be pardoned for some confusion of mind on the subject when, for example, he reads in *Ruoff* v. *Greenpoint Savings Bank* (40 Misc. 549): " It is objected by the defendant that the plaintiff gave no evidence of death; but the letters of administration are in and of themselves *prima facie* evidence of death. (*Carroll* v. *Carroll*, 60 N. Y. 121.) "

Then comes upon the statement in *Marks* v. *Emigrant Industrial Savings Bank* (122 App. Div. 661): " Proof of the probate of a will or the granting of letters of administration do not establish, even *prima facie*, the fact of death. (*Carroll* v. *Carroll*, 60 N. Y. 121.) "

Since much time and effort of the bench and bar are continually wasted by this and similar confusions of conceptions on the subject,

it may be worth the effort to attempt, by a general review of the principles controlling the subject, to allay the misapprehension which exists.

That, in many cases, public policy is served by indulging a presumption of death, has long been recognized. The early Roman law made captivity equivalent to civil death and permitted a wife to remarry at once. With the coming of more peaceful conditions, this rule was modified and the Codes of Constantine and Justinian required the wife of a captive to await the return of her husband for periods of four and ten years, respectively, before taking another spouse. Still later, all presumption of death was abolished and positive proof of the termination of life was required. On questions of property, the presumption of continuance of life was 100 years and this rule was followed by the canon and common law and quite generally by the civil law. The first seven-year statutes found in the common law were those of 1 Jac. I, chap. 11, section 2, relating to bigamy and of 19 Car. 2, chap. 6, concerning leases for life, the former permitting a wife whose husband had been absent for the the stated period, without communication or intelligence, to remarry without fear of prosecution for bigamy, and the latter establishing a presumption in certain cases that a life tenant was dead after a like time had elapsed. Section 841 of the Code of Civil Procedure was a re-enactment of our Revised Statutes (1 R. S. 749), and this in turn was substantially taken from this statute of Charles II, passed in 1667. (*Matter of Board of Education*, 173 N. Y. 321, 323.) As early as 1846 (*McCartee* v. *Camel*, 1 Barb. Ch. 455; *Oppenheim* v. *Wolf*, 3 Sandf. Ch. 571), and perhaps earlier, our courts began to apply the same principle to personal property, by analogy, and the practice has been consistently followed since that time. (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 203; *Matter of Rowe*, 103 Misc. 111; affd., 197 App. Div. 449; affd., 232 N. Y. 554; *Matter of Board of Education*, 173 id. 321, 323, 324; *Eagle* v. *Emmet*, 4 Bradf. Surr. 117, 118–121; *Merritt* v. *Thompson*, 1 Hilt. 550, 553.)

In any case of this type, the court is faced at the outset by several fundamental questions of jurisdiction. The one of primary importance is, of course, that as to whether or not the absentee is really dead. To this question, as will be later noted, the presumption provided by section 341 of the Civil Practice Act, may or may not apply, depending on the particular facts which may be shown to exist. But granting that it may be assumed that death has occurred, it does not follow that the particular court before which the question arises, whether that of the surrogate or one of general jurisdiction, has the power to proceed in the matter. While a presumption is sometimes held to exist that an absentee

is dead, this presumption, in the default of unusual facts, does not extend either to the time or place of death. Therefore, before a Surrogate's Court can grant letters upon the estate of an absentee who is presumptively dead, it must be proved affirmatively either that the absentee at the time of his presumed death was resident within the jurisdiction of the particular court whose powers are invoked, or that property of the decedent is there located. While this principle has been expressly adjudicated in only one case which has been found (*Matter of Jones*, 70 Misc. 154), the principle involved is unquestionably sound in view of the territorial limitations imposed upon any particular Surrogate's Court by sections 45 to 47 of the Surrogate's Court Act. Since "residence," as used in this and other statutes, means "domicile" (*Matter of Rooney*, 172 App. Div. 274, 278; *Matter of Norton*, 96 Misc. 152; affd., 175 App. Div. 981; *Matter of Martin*, 173 id. 1, 3; *DeMeli* v. *DeMeli*, 120 N. Y. 485, 491; *Matter of Bennett*, 135 Misc. 486), it follows that before an application similar to that in the instant case can be granted, it must affirmatively appear either that at the time of his supposed death the alleged decedent was domiciled within the territorial jurisdiction of the court, or that there is property there located, belonging to the alleged decedent. In this latter connection, also, in case the only property which is relied upon as establishing the jurisdiction of the court came into the beneficial ownership of the absentee during the period of his absence, the jurisdiction must fail unless the applicant can affirmatively establish that the absentee's acquisition of such beneficial ownership antedated his death. This point will be dwelt upon at greater length, *infra*.

Any consideration of the question of jurisdiction of the court in this connection would be incomplete which failed to consider the effect of the determination of the Supreme Court of the United States in *Scott* v. *McNeal* (154 U. S. 34). In this case a Probate Court of the State of Washington appointed an administrator of the estate of an absentee. The administrator duly sold realty of the absentee to defendant's grantor. The absentee returned after ten years, and this decision, reversing the Supreme Court of the State of Washington, held him entitled to recover the land from the *bona fide* purchaser, on the ground that the decree of the Probate Court was null and void as to him, being in violation of the Fourteenth Amendment to the Constitution of the United States which provides that no person shall be deprived of life, liberty or property without due process of law.

The Supreme Court points out at page 46 that jurisdiction can be acquired only through personal service or by a proceeding *in rem* and "even a judgment in proceedings strictly *in rem* binds

only those who could have made themselves parties to the proceedings, and who had notice, either actually, or by the thing condemned being first seized into the custody of the court. * * * And such a judgment is wholly void, if a fact essential to the jurisdiction of the court did not exist."

Adverting to the effect of probate proceedings, the court says (at p. 47): " The estate of a person supposed to be dead is not seized or taken into the custody of the court of probate upon the filing of a petition for administration, but only after and under the order granting that petition; and the adjudication of that court is not upon the question whether he is living or dead, but only upon the question whether and to whom letters of administration shall issue."

As noted by the court at page 49, it follows that in an administration, upon the estate of an absentee, granted under the existing laws, if the absentee subsequently returns, " the receipt of money by the administrator is no discharge of a debt; and a conveyance of property by the administrator passes no title." To the same effect, see *Marks* v. *Emigrant Industrial Savings Bank* (122 App. Div. 661, 665); *Bering* v. *U. S. Trust Co.* (201 id. 35, 37).

The amendment to section 119 of the Surrogate's Court Act, to which the instant applicant has adverted, is framed in an effort to remedy this precarious condition. Whether it will be successful to this end may well be left for determination after the statute has gone into operation and the question is presented. In any event, however, it is incumbent upon courts to exercise extreme conservatism in granting applications for the administration of the estates of absentees, and such administrations should be denied unless it is clear that a substantial object will be gained by their issuance. (Schouler on Executors, § 120; *Matter of Losee,* 46 Misc. 363, 367.)

Some of the considerations hereinbefore noted may become academic upon the going into effect of the changes in the law on September 1, 1930, but the basic questions relating to the presumption of death, when such conclusion appears justified on the facts presented, will continue to be as important then as they are to-day, and these matters will now be considered.

If it is assumed that the court, in any given case, is satisfied both of its jurisdiction in case the absentee is actually dead, and of the utility of administration, the question next presenting itself for decision is whether a presumption of death should be indulged.

As was said in *O'Gara* v. *Eisenlohr* (38 N. Y. 296, at p. 303): " Presumptions of fact are but inferences drawn from other facts

and circumstances in the case, and should be made upon common principles of induction."

In other words, if the usual experience of mankind demonstrates that when certain facts and conditions exist, definite other facts and conditions almost invariably follow, then, upon a showing of the precedent situation, a presumption will arise that the usual sequence has eventuated.

While the presumption of death has at times been referred to as one of law, the better opinion holds it to be a mixed presumption, with the factual element the more important. (*Matter of Board of Education*, 173 N. Y. 321, 326; *Cerf* v. *Diener*, 210 id. 156; *Butler* v. *Mutual Life Ins. Co.*, 225 id. 197, 203; *Eagle* v. *Emmet*, 4 Bradf. Surr. 117, 120.) The burden of proving the facts giving rise to the presumption always rests upon the person alleging it. (*2409 Broadway Corporation* v. *Lange*, 128 Misc. 118, 119; *Matter of Jones*, 70 id. 154, 157; *Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 203.) " To give rise to this presumption, more than the mere fact of absence during the period must be established. Evidence must be produced to justify the inference that the death of the absentee is the probable reason why nothing is known about him." (*Matter of Sullivan*, 130 Misc. 501, 502); " the proof should remove the reasonable probability of his being alive at the time." (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 203; *Straub* v. *Grand Lodge of the Ancient Order of United Workmen*, 2 App. Div. 138; affd., 158 N. Y. 729; *Merritt* v. *Thompson*, 1 Hilt. 550, 555.) As to the nature and quality of the proof required, the language of the Court of Appeals in *Butler* v. *Mutual Life Ins. Co.* (*supra*, 206) is particularly pertinent: " In view of the present agencies of extending aid and care in case of sickness or accident and intelligence to those concerned in case of disaster or death, the facts put forward as the source of the presumption of death, because of absence and lack of intelligence, should be carefully considered and should sustain that presumption."

The courts from earliest times have enjoined the exercise of caution in indulging the presumption. Thus we read in *O'Gara* v. *Eisenlohr* (38 N. Y. 296, at p. 299): " Presumptions of this kind require to be made with caution, and no one can look through the adjudged cases on this subject without being convinced that the legitimate limits of presumption have too frequently been overlooked." (At p. 300): " The presuming of absurdities in order to meet the exigencies of a particular case, must ever be fraught with mischief." (See, also, *Matter of Board of Education*, 173 N. Y. 321, 326; *Keller* v. *Stuck*, 4 Redf. Surr. 294, 299.)

Perhaps the oldest general presumption of death is that already

noted, which is applied in cases where a continuance of life would be contrary to human experience. In the middle ages this was placed at 100 years. The few modern cases found in which the principle has been applied have fixed no arbitrary period, leaving the determination one of fact and common experience as applied to the situation presented before the court. (See *Young* v. *Shulenberg*, 165 N. Y. 385, 389; *Luby* v. *Washington Sterling Corporation*, 216 App. Div. 255.)

While the presumption of death may be indulged when the facts justify, it is also true that " existence at an antecedent date gives rise to a presumption of existence at a subsequent date " (*Young* v. *Shulenberg*, 165 N. Y. 385, 389; *Dworsky* v. *Arndtstein*, 29 App. Div. 274, 278; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296, 299; *Dietrich* v. *Dietrich*, 128 App. Div. 564, 571; *2409 Broadway Corporation* v. *Lange*, 128 Misc. 118, 119; *Eagle* v. *Emmet*, 4 Bradf. Surr. 117, 123; 3 Abb. Pr. 218), and the presumption of death " is one which is not self-effective, but is only applicable under conditions well recognized in the adjudicated cases." (*Dunn* v. *Travis*, 56 App. Div. 317, 320.) No presumption of death from disappearance will be indulged, short of seven years (*Matter of Chancellor*, 178 N. Y. Supp. 832), except in those cases where the irresistible inference from the facts demonstrates that death occurred in some clearly identified disaster, in which case, it may be. (*Matter of Miller*, 67 Misc. 660, 662; *Matter of Morgan*, 30 id. 578; *Eagle* v. *Emmet*, 4 Bradf. Surr. 117, 119; *Matter of Buckham*, 5 N. Y. Supp. 565; *Matter of Ketcham*, Id. 566.) An excellent example of this type of case is that in which the absentee is known to have been on a vessel which is long overdue, without intelligence from any one on board. Under such circumstances, the person in question is presumed to be dead upon the expiration of a period of time equal to twice the usual duration of the voyage. (*Gerry* v. *Post*, 13 How. Pr. 118, 120.) (See, also, *Oppenheim* v. *Wolf*, 3 Sandf. Ch. 571, 576; *Matter of Stewart*, 3 N. Y. Supp. 284, 285, 1 Con. Surr. 86; *King* v. *Paddock*, 18 Johns. 141, 143; *Merritt* v. *Thompson*, 1 Hilt, 550, 554, 555.)

This brings us to the consideration of the presumption from seven years' absence which is the question most frequently presented. A reading of the cases indicates that in many determinations the courts have either consciously or otherwise based their decisions in considerable measure on the results which would be achieved in the proceedings under review. In only one instance, however, has an opinion been frank enough to avow this as among the *rationes decidendi*. In *Matter of Wagener* (143 App. Div. 286) the court says (at p. 290): " Of course it is quite possible to take a different

view of the case. But when it comes to balancing probabilities in a case like this I do not think we are bound to lay the result entirely out of sight."

Apparently this consideration of the result to be attained has been particularly potent in the cases involving title to real estate, since, whenever the question has been presented in cases of this type, the courts have quite uniformly refused, even on extremely strong factual showings, to presume death in a period short of thirty-seven years' unexplained absence. (*Barson* v. *Mulligan*, 191 N. Y. 306) absence thirty-seven years, death presumed; (*Cerf* v. *Diener*, 210 N. Y. 156) absence twenty-five years, death not presumed; (*Dworsky* v. *Arndtstein*, 29 App. Div. 274) absence thirty years, death not presumed; (*Vought* v. *Williams*, 120 N. Y. 253) absence twenty-four years, death not presumed; (*Donovan* v. *Twist*, 105 App. Div. 171) absence twenty-two years, death not presumed; (*Luby* v. *Washington Sterling Corporation*, 216 App. Div. 255) absence fifty-five years, death presumed; (*McNulty* v. *Mitchell*, 41 Misc. 293) absence forty-three years, death presumed; (*McComb* v. *Wright*, 5 Johns, Ch. 263) absence forty years, death presumed.

The Court of Appeals calls especial attention to this rule respecting title to real estate in *Vought* v. *Williams* (120 N. Y. 253), saying (at p. 260): " There must be some point of time of course when the presumption of death would arise, but we have been referred to no case in this state in which that presumption has prevailed where the absence was less than forty years."

The single exception which has been found, in which a discordant result was reached, was in the case of *Langrick* v. *Rowe* (212 App. Div. 404), in which the court held that such presumption would be indulged after eleven years, this determination being expressly predicated on the fact that three previous determinations of death had been made respecting the same individual, the last being by the Court of Appeals.

If the court is satisfied of its jurisdiction on general grounds and of the advantage of a determination of death, it must next analyze the facts presented to decide whether the showing made warrants a conclusion on ordinary principles of deduction from common human experience, that the reason for absence and failure of intelligence of or from the person in question is such as to warrant the conclusion that death is the cause.

Obviously, absence from, or lack of information at a place other than that in which the person is supposed to be, can form no basis for any conclusion of death. It has, therefore, been uniformly held that to raise a presumption of death from absence, it must be clearly demonstrated that the absence is from the individual's actual

home and *bona fide* residence at the time of the alleged disappearance and that the existence of such home must be shown. (*Matter of Board of Education*, 173 N. Y. 321, 326; *Williams* v. *Post*, 158 App. Div. 818, 821; *Dworsky* v. *Arndtstein*, 29 id. 274; *Matter of Matthews*, 75 Misc. 449, 451; *McCartee* v. *Camel*, 1 Barb. Ch. 455, 463, 464; *Matter of Ackerman*, 2 Redf. Surr. 521; *Keller* v. *Stuck*, 4 id. 294.) The rule in this connection is well stated by Surrogate LIVINGSTON in the case last cited. He says (at p. 298): " The absence, without being heard from for seven years, which will warrant the presumption that a person is dead, means absence from that person's place of residence — his home — with which he would most certainly keep up some kind of communication, or to which he would return were he alive." (See, also, *Matter of Tobin*, 15 N. Y. St. Repr. 749.)

Granting that the absence is from the person's home, the court must be satisfied that there were no conditions in his life which in common experience would make his return unlikely, as where he was a defaulter at the time of his disappearance as in *Van Williams* v. *Elias* (106 App. Div. 288) or had abandoned his wife and was known to be living with another woman, as in *Donovan* v. *Twist* (105 App. Div. 171).

It is a matter of common knowledge that the two considerations which weigh most strongly with the average person are the ties of love and affection, and considerations of financial advantage. In determining whether death is the probable reason for his absence, a showing of his relations with those left behind is most important. (*Matter of Board of Education*, 173 N. Y. 321, 326; *Matter of Miller*, 9 N. Y. Supp. 639, 640; affd., *sub nom. Matter of Taylor*, 66 Hun, 626; affd., 147 N. Y. 713; *Cerf* v. *Diener*, 210 id. 156; *Karstens* v. *Karstens*, 29 App. Div. 229; *Dunn* v. *Travis*, 56 id. 317; *Donovan* v. *Twist*, 105 id. 171, 174; *Matter of Wagener*, 143 id. 286, 290; *Matter of Benjamin*, 155 id. 233; *Matter of Doughty*, 125 Misc. 360, 361; *Town of Van Buren* v. *City of Syracuse*, 72 id. 463, 467; *Morrow* v. *McMahon*, 35 id. 348, 351; *Matter of Tobin*, 15 N. Y. St. Repr. 749, 751.) Likewise the fact of whether or not property of any appreciable value was abandoned is a circumstance to which weight will be attached. (*White* v. *Emigrant Industrial Savings Bank*, 146 App. Div. 591; affd., 205 N. Y. 571; *McNulty* v. *Mitchell*, 41 Misc. 293, 294; *Matter of Nolting*, 43 Hun, 456; *Matter of Ackerman*, 2 Redf. Surr. 521.)

If, upon his disappearance, the absentee left no property then belonging to him, the question of whether or not a financial inducement to return, if living, would be supplied by the subsequent accrual of a beneficial interest either from a decedent's estate or

otherwise, would depend on whether he knew or was likely to hear of it. (*Matter of Rowe*, 103 Misc. 111; affd., 197 App. Div. 449; affd., 232 N. Y. 554; *Cerf* v. *Diener*, 210 id. 156, 161; *Karstens* v. *Karstens*, 29 App. Div. 229, 235; *Dunn* v. *Travis*, 56 id. 317; *Matter of Sanford*, 100 id. 479; *Vought* v. *Williams*, 120 N. Y. 253, 258.)

While it is unquestionable that financial considerations and ties of affection are considerations of weight with the average normal person, it may obviously be true that the general character, disposition and habits of a particular absentee were abnormal and that consequently these considerations carried no weight in his particular case. Therefore, facts furnishing full information on this subject are requisite. (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 206; *Matter of Miller*, 9 N. Y. Supp. 639; affd., *sub nom. Matter of Taylor*, 66 Hun, 626; affd., 147 N. Y. 713; *Matter of Matthews*, 75 Misc. 449, 451; *Town of Van Buren* v. *City of Syracuse*, 72 id. 463, 467.)

Facts of importance as bearing directly on the probability of actual death as distinguished from considerations giving rise to a conclusion of its probability from absence, should be shown. Such facts are whether the absentee was in good health when last seen (*White* v. *Emigrant Industrial Savings Bank*, 146 App. Div. 591; affd., 205 N. Y. 571; *Vought* v. *Williams*, 120 id. 253, 258; *Matter of Smith*, 77 Misc. 76, 80; *Town of Van Buren* v. *City of Syracuse*, 72 id. 463, 467; *McNulty* v. *Mitchell*, 41 id. 293; *Morrow* v. *McMahon*, 35 id. 348, 351; *Matter of Nolting*, 43 Hun, 456; *Matter of Buckham*, 5 N. Y. Supp. 565; *Matter of Ackerman*, 2 Redf. Surr. 521); whether he was despondent (*Matter of Nolting*, 43 Hun, 456), or intended to engage in a hazardous occupation or was going to a place of notoriously dangerous surroundings. (*Matter of Board of Education*, 173 N. Y. 321, 326; *Cerf* v. *Diener*, 210 id. 156; *Van Williams* v. *Elias*, 106 App. Div. 288, 292; *Connor* v. *N. Y. Life Ins. Co.*, 179 id. 596, 597; *Matter of Miller*, 67 Misc. 660; *Matter of Morgan*, 30 id. 578; *Matter of Nolting*, 43 Hun, 456.)

Failure by the absentee to communicate with those left behind is frequently emphasized as a consideration lending weight to other demonstrated facts in reaching a presumption of death, but whereas communication destroys any possibility of presuming the absentee dead, the reverse by no means follows, since, obviously, a failure to communicate is meaningless in the absence of a showing of habits of communication by the absentee with the persons in question (*Matter of Jones*, 70 Misc. 154), or of closeness and cordiality of relations which would make such communication probable. (*Matter of Board of Education*, 173 N. Y. 321, 326; *Matter of Miller*, 9 N. Y. Supp. 639, 640; affd., 147 N. Y. 713; *Cerf* v. *Diener*, 210 id. 156; *Karstens* v. *Karstens*, 29 App. Div. 229; *Dunn* v. *Travis*, 56 id.

317; *Donovan* v. *Twist*, 105 id. 171, 174; *Matter of Wagener*, 143 id. 286, 290; *Matter of Benjamin*, 155 id. 233; *Matter of Doughty*, 125 Misc. 360, 361; *Town of Van Buren* v. *City of Syracuse*, 72 id. 463, 467; *Morrow* v. *McMahon*, 35 id. 348, 351; *Matter of Tobin*, 15 N. Y. St. Repr. 749, 751.) Thus, while in an ordinary case an absent husband and father might be expected to communicate with his wife and children and his failure to do so might well be considered an important factor in reaching a presumption of death, the actual surrounding facts may be such as to emphatically negative any such deduction as was noted in the *Van Buren Case* (*supra*), where the court remarked (at p. 467): " * * * a deserting husband and father is the last person who ordinarily would communicate his whereabouts to the persons whom he had wronged and for whose support he was liable."

Even though unexplained absence from home and unreasonable failure to communicate be amply demonstrated, yet under all the cases found, no presumption of death from seven years' absence will be indulged unless the person seeking the adjudication demonstrates satisfactorily that he has conducted a thorough and exhaustive search for the missing person. It is on this phase of the proof that applications of this type are usually most deficient. As was emphasized as early as 1846 in *McCartee* v. *Camel* (1 Barb. Ch. 455, at p. 463), the search must be conducted in the places and among the individuals " from whom a party in search of the truth would be likely to make inquiries." This condition precedent to adjudication is inflexible. In ninety-nine out of every hundred applications of this type, however, it is not met. Some showing of inquiry is, of course, inserted but the impression usually made is that its efficacy toward the result is scarcely superior to a ritualistic circumambulation of a locality and that the earnestness of the effort is substantially similar to the enthusiasm with which an impecunious defaulting debtor is wont to seek out his outraged and pressing creditor. That this should be the fact is not surprising in view of the frailties of human nature, since the attorney for the applicant is well aware that if, in spite of his fond hopes, he succeeds in finding the absentee, his reward will at most be a hearty handshake, while if he fails to do so after evidencing sufficient effort to " get by the Judge " his reward will be commensurate with the fact that he has created something for his client out of nothing.

No set rules can be laid down in this regard, but it is believed that efforts to find should be as diligent as would be the case were the fees of counsel contingent on success in discovering the absentee and not, as in the usual case, on success in failing to locate him. Not only should they be directed to the place from which the last

information of the absentee came, but also to every other locality to which his known inclinations, habits and associations might reasonably be supposed to have led him. (*Dunn* v. *Travis*, 56 App. Div. 317.) So far as this court is concerned, its inclination is to view with skepticism any protestations of ardent desire to find the absentee where diligent search has not been made for him as soon as his absence became known, without awaiting the accrual of some pecuniary advantage to be gained by his death or the passage of the period mentioned in the statute, and apparently other tribunals have similarly viewed the circumstance. (*Cerf* v. *Diener*, 210 N. Y. 156, 160; *Dunn* v. *Travis*, 56 App. Div. 317, 320; *Matter of Wagener*, 143 id. 286.)

The effect of an adjudication of death resulting from indulging in the presumption, and the consequent grant of letters, has given rise to differences of opinion in the past. While it has been successively held that the granting of administration was an adjudication of death (*Matter of Rowe*, 103 Misc. 111), that the question is not clear (*Williams* v. *Post*, 158 App. Div. 818, 820), and that it was not such an adjudication (*Carroll* v. *Carroll*, 60 N. Y. 121, 124; *Marks* v. *Emigrant Industrial Savings Bank*, 122 App. Div. 661, 664), it is now well settled that letters testamentary or of administration are not even *prima facie* evidence of death and merely establish the representative character of the executor or administrator appointed. (*Scott* v. *McNeal*, 154 U. S. 34, 47; *Matter of Rowe*, 197 App. Div. 449, 452; affd., 232 N. Y. 554; *Carroll* v. *Carroll*, 60 id. 121, 123; *Marks* v. *Emigrant Industrial Savings Bank*, 122 App. Div. 661, 664; *Bering* v. *U. S. Trust Co.*, 201 id. 35, 37; semble accord, *Matter of Sanford*, 100 id. 479, 482; cf., *White* v. *Emigrant Industrial Savings Bank*, 146 id. 591, 593; affd., 205 N. Y. 571; contra, *Ruoff* v. *Greenpoint Savings Bank*, 40 Misc. 549, 550.)

*A fortiori*, such an adjudication, based on a presumption, is not a determination of the time of death on the last day of the presumptive period (*McCartee* v. *Camel*, 1 Barb. Ch. 455, 462), or at any other particular time (*Williams* v. *Post*, 158 App Div. 818, 820; *Matter of Sanford*, 100 id. 479, 482; *Bering* v. *U. S. Trust Co.*, 201 id. 35, 37; *Matter of Smith*, 77 Misc. 76, 81; *Matter of Bernard*, 89 id. 705, 706; *Eagle* v. *Emmet*, 4 Bradf. Surr. 117, 120; 3 Abb. Pr. 218; contra, *Matter of Davenport*, 37 Misc. 455, 456), and in any case where the rights of an individual depend upon death having occurred on some particular date prior to the expiration of the seven years' period, the burden of proof is upon such individual to establish that fact as in any ordinary case. (See cases last cited and *Eckersley* v. *Curran*, 158 App. Div. 440, 442; *Connor* v. *N. Y. Life Ins. Co.*, 179 id. 596, 597; *Oppenheim* v. *Wolf*, 3 Sandf. Ch. 571), although

this may, like other facts, be shown by inference. (*Matter of Ketcham*, 5 N. Y. Supp. 566; *Sheldon* v. *Ferris*, 45 Barb. 124, 128; *Connor* v. *N. Y. Life Ins. Co.*, 179 App. Div. 596, 597; *Matter of Losee*, 46 Misc. 363, 367; *Matter of Nolting*, 43 Hun, 456.) On the other hand, where the rights in question accrued after the expiration of the presumptive period, additional proof of the exact time of death will not be required. (*Eckersley* v. *Curran*, 158 App. Div. 440; *Matter of Rowe*, 103 Misc. 111; affd., 197 App. Div. 449; affd., 232 N. Y. 554; reargument denied, Id. 596; remittitur denied, Id. 628; *Matter of Benjamin*, 155 App. Div. 233.)

In closing, it should be noted that where a presumption of death from absence is indulged, it will further be presumed that the absentee died intestate, unmarried and without heirs in the absence of a showing to the contrary. (*Barson* v. *Mulligan*, 191 N. Y. 306, 324; *Karstens* v. *Karstens*, 29 App. Div. 229, 235; *Matter of Smith*, 77 Misc. 76, 81; *McComb* v. *Wright*, 5 Johns. Ch. 263.)

Applying the principles reviewed to the instant application, it is apparent that the facts shown fall far short of the requirements for the indulgence of the presumption of death. The only asset of the absentee which is shown to exist is an interest in the estate of his wife who died less than a year after his disappearance. If the only available facts are those set forth in the papers submitted, the applicant could never establish her rights to that fund.

It inferentially appears that the absentee was of a roving disposition and, apparently, on the day of his disappearance, had turned all his available resources into cash and they disappeared with him.

His relations with his wife and aunt are not shown, nor is there any demonstration of a habit of communication with the aunt such as to warrant the drawing of any inference from his alleged failure subsequently to communicate with her.

Many of the facts alleged, such as efforts of the deceased wife and others to find the absentee, have no probative value whatsoever, being obviously hearsay or assumptions at the most. The alleged search and inquiry is even less convincing than in the usual case of this type. One of the exhibits dated September 26, 1924, states that relatives of the absentee heard of his presence in San Francisco a year after his alleged disappearance. Taken as a whole, there is such an air of concealment of material facts throughout the affidavits that the court is not convinced that there is any merit in the application whatsoever.

The petition is, therefore, denied.