1821.

M'COMB
v.
WRIGHT.

*Silliman*, for the defendants, *N.* and *N.* He cited
1 *Maddock's Tr.* 176. *Peake's N. P.* 203. *Mitf. Tr.* 165.
3 *Atk.* 812. *Cooper's Tr.* 86.

*Dyckman*, contra.

---

M'COMB, executor of THOMAS OGILVIE, *against* WRIGHT.

Ignorance in a family of the existence of one of the children, who had
gone abroad, at the age of twenty-two, unmarried, and had not been
heard of for upwards of forty years, is sufficient, with other circum-
stances, to warrant the Court or a jury to presume the fact of his
death without issue.

THIS cause came to a hearing on exceptions to the
master's report, which was in favour of the competency
of the plaintiff to give a good title, and such as a purchaser
might safely take.

June 7th.

1821.

M'Comb
v.
Wright.

The report stated, that *Alexander Ogilvie* was seized in fee, of the lot in question, and by his will, dated 21st of *January*, 1748, he gave all his estate, real and personal, to his wife for life, and then to his children, *Alexander, Thomas, Jane, John* and *Catharine*, as joint heirs. He died seized, prior to the year 1770. His wife took the rents and profits, and died in 1777. On the 14th of *March*, 1786, *Alexander* and *Jane*, two of the children, by a warranty deed, conveyed the lot to *Thomas*, for a valuable consideration, and that deed recited the death of *Catharine* in 1754, without husband or issue. *Thomas* pulled down the old house, and built a new one, and continued in peaceable possession thereof, and in the receipt of the rents and profits, until his death, in *March*, 1815, and his executor, who was authorized by his will to sell, held the same, until the sale by him to the defendant, in *January*, 1819. The master reported the death of *Catharine*, as recited in the deed; and that *John* went to *England* a short time before the Revolutionary war, at the age of twenty-two, unmarried; and had not been heard of since the commencement of that war. He had threatened to drown himself, and it was believed among his acquaintance in *London*, that he had drowned himself in the *Thames*. *Sarah Hunt*, a witness, aged 62 years, and intimate with the *Ogilvie* family, testified that her first acquaintance with the family commenced when she was about ten years old, and continued until she married, after the revolutionary war. That she was frequently an inmate of the family, and never heard of a daughter named *Catharine*, which from her intimate acquaintance with the family, and particularly with the mother, she must have done, had *Catharine* been living, and she had, therefore, no doubt, that *Catharine* died in early infancy, and before her acquaintance with the family.

The exceptions to the report were,

1. That there was not sufficient proof that *Catharine* was

not dead, or if dead, that she died unmarried, and with- out issue.

2. That the evidence as to the death of *John* was vague, and afforded no foundation for that presumption.

THE CHANCELLOR overruled the exceptions, and held, that lapse of time, and family ignorance of the existence of *Catharine* or *John*, for upwards of forty years before the sale in question, and the other circumstances, were suffi- cient to warrant this Court, or to warrant a jury, in a Court of law, and to render it the duty of either, to raise the pre- sumption of death, without issue. That the title under the will of the plaintiff's testator was, therefore, to be deemed good.