In the Matter of the Accounting of EMMA RUEGE, as Sole Surviving Executrix, and EMMA RUEGE et al., as Executors of THEODORE F. SANDERS, Deceased Executor of PAULINE POPPITZ, Deceased.

Surrogate's Court, Kings County, November 9, 1950.

*I. Leonard Cohen* for sole surviving executrix, petitioner.

*James W. Feely* for Edward Brandt, as administrator of the estate of Annie Brandt, deceased, respondent.

*Edward B. Schulkind,* special guardian for missing legatees.

*Titus H. Konthér* for Metropolitan Lutheran Innermission Society and another.

*William H. Wach* for German Masonic Home Corp.

*McDermott, Turner & Hart* for Trustees of Masonic Hall and Asylum Fund.

*Pressinger & Wigg* for Chapin Home for the Aged and Infirm.

*Paul G. Gravenhorst Wartburg* for Orphans' Farm School and another.

*Louis Charles Wills* for Industrial Home for the Blind.

RICHARDSON, S.   In this proceeding to settle the account of the executors, a determination is sought that the four legatees named in paragraph " Fifth " of testatrix' will predeceased her, leaving no issue surviving testatrix, and that the legacies given thereunder lapsed and are distributable as part of the residuary estate.

The testatrix died October 12, 1929, upwards of seventy-eight years of age.   Her will, dated August 5, 1929, was admitted to probate on January 17, 1930.   Under paragraph " Fifth " thereof testatrix bequeathed to each of four named cousins, " children of my uncle, Adam Franck, the sum of $10,000.", and (a) should any of said cousins predecease her leaving issue surviving her, then such bequest would be payable to such issue; (b) or should any of said cousins predecease her without issue, then such bequest would be payable to the survivors of the named cousins; (c) or should all the cousins predecease her leaving issue, " the said sum of $40,000 " would be payable to their issue per stirpes; (d) or should none of the cousins or their issue survive her, then said legacy of $40,000 would become part of the residuary estate.   The residuary estate is bequeathed in equal shares to eighteen eleemosynary institutions.

The deceased executor, in an affidavit filed in the probate proceeding, stated that the testatrix informed him at the time she gave instructions for her will that she had not seen any of the four cousins for upwards of thirty-eight years and did not know whether they were dead or alive. Considerable publicity was given to the death of the testatrix by reason of the size of her estate and the poverty-stricken circumstances under which she lived. The names of the four cousins were mentioned in some of the newspapers. People of similar names to those of the four cousins, as well as persons of dissimilar names communicated with the executors, claiming kinship to the cousins and the testatrix. Independent investigations by the executors and the special guardians appointed in the probate proceeding and this proceeding disclosed still other persons of similar names to those of the cousins. None of these, however, was able to establish any relationship to the testatrix.

Diligent effort by the executors through the years in every avenue of search known to experienced investigators, as well as independent investigations by the special guardians, have produced nothing but negative evidence with respect to the four cousins. The task was difficult since it was not known, nor has it yet been discovered, where the four cousins were born, their dates of birth, their residences at any point of time, their marital status, or whether or not they have died. The total absence of any concrete data regarding them has impelled one of the residuary legatees to suggest that "they may perhaps have been only a figment of testatrix' imagination and perhaps never even in existence."

The four cousins do not appear to the court to be absentees since nothing is known of them other than that the testatrix stated she saw them thirty-eight years before she executed her will. If they may, however, be so characterized, then their mere absence alone is insufficient to warrant a determination of death based upon a presumption without any factual support. (*Matter of Schoonmaker,* 160 Misc. 810, affd. 254 App. Div. 833; *Matter of Bd. of Educ. of City of New York,* 173 N. Y. 321; *Butler* v. *Mutual Life Ins. Co.,* 225 N. Y. 197.)

The lack of knowledge or information concerning the whereabouts of the cousins at any point of time made most difficult the executors' task of locating them, if alive, or if dead, their surviving issue, if any. By reason of such lack of information the executors were unable to initiate their search and investigation at any particular place or places. If reliance is to be placed on a presumption of death in determining the nonexistence of a

person, it is necessary that an investigation and inquiry be made at the place where he was last known to have been. (*Dunn* v. *Travis,* 56 App. Div. 317, 321; *Matter of Katz,* 135 Misc. 861, 871; *Matter of Feehan,* 145 Misc. 837.) In the present instance this has to date not proved possible.

No facts have been presented here upon which a determination may be made that the cousins predeceased testatrix ,leaving no issue. Nor have any facts been adduced which would warrant the court in indulging in the presumption that because of extended absences from their usual places of residences they are dead, together with the further presumption that they died intestate, unmarried and without issue. (*Barson* v. *Mulligan,* 191 N. Y. 306, 324; *Karstens* v. *Karstens,* 29 App. Div. 229, 235; *Matter of Smith,* 77 Misc. 76, 81; *McComb* v. *Wright,* 5 Johns. Ch. 263.)

The court finds, on all the evidence, that the residuary legatees have not sustained their burden of proving that the four named cousins all predeceased testatrix, leaving no issue surviving testatrix, and, therefore, the court finds that the legacies have not lapsed.

Proceed accordingly.