Harry G. Herman, S.
The question before the court in this accounting proceeding is whether eight persons, alleged to be first cousins, once removed, are the sole distributees of the decedent, who died on April 2, 1963. If Edward de Laureal Slevin, a first cousin born in 1865, survived the decedent, he would be the sole distributee, and the entire net distributable estate would be paid to him or deposited to his credit pursuant to section 273 of the Surrogate’s Court Act. If Edward de Laureal Slevin predeceased the decedent but was survived by issue who survived the decedent, such issue would be in the *853 same degree of kinship as the eight persons referred to above.
A hearing in this matter was held on January 7, 1965. In a memorandum decision dated February 11, 1965 (Matter of Leary, N. Y. L. J., Feb. 18, 1965, p. 18, col, 5) this court held that due to the failure to cite the decedent’s unknown distributees who were thus not parties and were unrepresented by any attorney or by any special guardian, and upon the evidence adduced at the hearing, largely hearsay, it could not find that the eight cousins, once removed, were the only distributees of the decedent.
Since that time, a supplemental petition was filed, and a supplemental citation issued to Edward de Laureal Slevin, if living, and if dead to his distributees, and to all other distributees of this decedent. A special guardian was designated to represent them, and he filed a report. The court then restored the matter to the calendar to fix the date for a further hearing, which was held on December 13, 1965. By agreement of counsel, the testimony of F. Evremont Hornsby, who could not come here to testify, was taken in St. Louis on December 15, 1965.
Some of the evidence received at the first hearing in an attempt to prove that Edward de Laureal Slevin had predeceased the decedent and that he had died unmarried and without issue was hearsay, which could not qualify for the pedigree exception to the hearsay rule (see Richardson, Evidence [9th ed. by Prince, 1964], §§ 215-224; 5 Wigmore, Evidence [3d ed., 1940], §§ 1481-1503).
The court reserved decision on an objection to the deposition of Elizabeth Slevin, a first cousin, in connection with an heir-ship proceeding in the Probate Court of Hamilton County, Ohio; the objection is sustained. Elizabeth Slevin received a 1/144 share in that estate, and thus her deposition was not ante litem motam (Richardson, supra, § 219). The decree in that proceeding in the estate of Edward C. Quinn, deceased, who died on June 24, 1943, is in evidence. It shows that no share was decreed to be paid to Edward de Laureal Slevin. However, whether or not Edward or his distributees were parties to that proceeding or were represented by a special guardian is not indicated by the decree, nor is the basis of that court’s determination. It cannot furnish the basis for a determination herein.
At the first hearing pedigree testimony was received from Peter Farrelly, one of the claimants herein, who testified that Louis J. Slevin, a brother of Edward de Laureal Slevin, had told him in 1934 or 1935 that Edward de Laureal Slevin had died in Cuba, and had never married. Similar pedigree testimony was given by Octavie Page Carlton, another of the claim *854 ants, who testified that her mother, Madeline Mary Slevin Page, a sister of Edward de Laureal Slevin, told her Edward had never married; her mother had written to her in 1933 or 1934 saying that she had heard from a sister in Florida that Edward had died in Cuba. She also testified that Louis J. Slevin had told her Edward had died unmarried.
There was no testimony to indicate where Edward had died, if he had, or where he was buried, nor any to indicate that any true search had been made to locate him in Cuba, if alive, or to ascertain if a record of his death or marriage or of the birth of children could be found in Cuba. A later request was made by the special guardian subsequently appointed by the court to Swiss authorities representing United States interests in Cuba to see if Edward died in the same district of Havana where his father had died; no such death certificate was found. This was the only effort made within the entire country of Cuba by anyone concerned in this case to locate Edward de Laureal Slevin.
At the second hearing the additional efforts to locate Edward there testified to failed to convince the court that counsel had made any real attempt to have a search made in Cuba. The pedigree testimony of F. Evremont Hornsby, taken in St. Louis, corroborates the previous pedigree testimony. But that does not resolve the issue at bar. As it is stated in Fisch, New York Evidence ([1959], § 981): “ Because of such factors as family pride, the impunity with which a witness can slant statements claimed to have been heard from a now unavailable declarant, the impermanence of memory, and the questionableness of the assumption that every member of the family, no matter how remotely related, knows the true facts of his family history, pedigree evidence not only may be overcome by other evidence [citing Chamberlain v. Chamberlain, 71 N. Y. 423] but is generally regarded with suspicion [citing Eisenlord v. Clum, 126 N. Y. 552; Chamberlain v. Chamberlain, supra].”
If a thorough search had been conducted in Cuba and no trace of Edward, nor of any marriage, nor of any issue could be found, then the pedigree testimony could very well have satisfied the court that a prima facie case had been made that the eight first cousins, once removed, were the decedent’s sole distributees. But the pedigree testimony is no substitute for a thorough search to locate the missing distributee. In the absence of a thorough search, the court cannot allow the claimants to supply self-serving statements, rest, and prevail.
The claimants urge that there is a presumption of death by reason of Edward’s absence for at least seven years, and further, *855 a presumption of death without issue. In Matter of Poppitz (199 Misc. 677, 679-680) it was stated: “If reliance is to be placed on a presumption of death in determining the nonexistence of a person, it is necessary that an investigation and inquiry be made at the place where he was last known to have been. * * * In the present instance this has to date not proved possible. ’ ’
The court cannot be persuaded that Edward is dead from the fact that members of the family have not heard from him. The court is not satisfied from the testimony offered that Edward maintained any regular correspondence or communication with the family. As Surrogate Wingate said in Matter of Katz (135 Misc. 861, 870-872): “ obviously, a failure to communicate is meaningless in the absence of a showing of habits of communication by the absentee with the persons in question * * * or of closeness and cordiality of relations which would make such communication probable * * * under all the cases found, no presumption of death from seven years’ absence will be indulged unless the person seeking the adjudication demonstrates satisfactorily that he has conducted a thorough and exhaustive search for the missing person * * * Not only should they be directed to the place from which the last information of the absentee came, but also to every other locality to which his known inclinations, habits and associations might reasonably be supposed to have led him.”
In the absence of a thorough search of the records of Cuba to locate Edward, the court will not presume him dead (see, also, Matter of Kestel, 98 N. Y. S. 2d 721, 723, affd. 277 App. Div. 883).
The net distributable estate herein shall be paid into court to the credit of Edward de Laureal Slevin, whose whereabouts are unknown, by depositing said funds with the Commissioner of Finance of the County of Westchester, without prejudice to any future proceeding to withdraw said funds.
The fair and reasonble value of the legal services herein performed is hereby fixed in the amount requested for all legal services rendered and to be rendered to and including the settlement of the decree to be made herein.
The petitioner will be authorized to retain the sum of $25,000 to defray any further tax liability, subject to an application to be made at the foot of the decree as to the disposition of the amount reserved as and when the tax liability is finally determined.